951 So.2d 359 (2006)
Marcus L. SMITH
v.
THURMAN OILS, INC.
No. 2006 CA 0743.
Court of Appeal of Louisiana, First Circuit.
December 28, 2006.
*360 Elizabeth Smyth Sirgo, Bradley J. Luminais, Jr., Metairie, Counsel for Plaintiff/Appellant Marcus L. Smith.
Leland R. Gallaspy, Covington, John N. Gallaspy, Bogalusa, Counsel for Defendant/Appellee Thurman Oils, Inc.
Before: CARTER, C.J., WHIPPLE and McDONALD, JJ.
McDONALD, J.
In May of 1998, Marcus L. Smith was hired by Thurman Oils, Inc., as a full-time commercial truck driver and miscellaneous laborer. His job required him to drive commercial trucks delivering fuel to customers within a 25-mile radius. In 1999, Mr. Smith was diagnosed with myotonic muscular dystrophy, which is a degenerative condition that can affect the arm and neck muscles. Mr. Smith informed his boss, Joe Hernandez, of the diagnosis. Mr. Hernandez researched the condition and learned that it could affect the ability to grip and release objects. Mr. Hernandez contacted his company's insurance agent, Richard Garrity, and explained the situation. Mr. Garrity informed Mr. Hernandez that Mr. Smith would not be insurable as a truck driver for Thurman Oils under the circumstances. Mr. Hernandez then terminated Mr. Smith's employment in January of 2000.
Mr. Smith filed suit against Thurman Oils, alleging that the company wrongfully terminated him from his job in violation of the Louisiana Employment Discrimination Law (LEDL), La. R.S. 23:301, et. seq., and that at the time of his firing he was capable of performing all the essential functions of his employment with or without reasonable accommodation. Alternatively, Mr. Smith asserted that Thurman Oils failed to provide him with reasonable accommodation to perform his employment. Mr. Smith asked for compensatory damages, back pay, benefits, reinstatement or appropriate front pay, and reasonable attorney fees and costs.
Thurman Oils answered the petition, denying the allegations. Thereafter, Thurman Oils filed a motion for summary judgment, asserting that the LEDL required that Mr. Smith prove the termination was unrelated to his ability to perform the duties of the job, and to prove that he was disabled, having an impairment that substantially limited one or more life activities. Thurman Oils asserted that Mr. Smith was unable to prove at trial that the termination was not due to his inability to perform the duties of his job, and that he was unable to prove at trial that he was a "disabled person" as defined by the LEDL.
After a hearing, the trial court granted the motion for summary judgment and dismissed the suit with prejudice. Mr. Smith is appealing that judgment, and makes the following assignments of error:
1. The trial court erred in holding Smith had not demonstrated that he had a "disability" within the meaning of the ADA [Americans With Disabilities Act] and the LEDL.
2. The trial court erred in granting Thurman Oils' Motion for Summary Judgment when Smith presented a prima facie case of prohibited employment discrimination as a qualified individual with a disability who was terminated because of his disability.
Appellate courts review summary judgments de novo under the same criteria that govern the trial court's consideration of whether a summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). The judgment sought shall be rendered forthwith if the pleadings, *361 depositions, answers to interrogatories, and admissions on file, together with supporting affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).

ASSIGNMENT OF ERROR NO. 1
Mr. Smith asserts that the trial court erred in holding that he had not demonstrated that he had a "disability" within the meaning of the ADA and the LEDL, because he established that Thurman Oils erroneously regarded his condition as substantially limiting his ability to work in a broad class of jobs.
Louisiana Revised Statutes 23:322(3) defines a "disabled person" as "any person who has a physical or mental impairment which substantially limits one or more of the major life activities, or has a record of such an impairment, or is regarded as having such an impairment." "Major life activities" are defined by La. R.S. 23:322(7) as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."
These Louisiana statutes are similar to the Americans with Disabilities Act, 42 USC § 12101, et seq. In interpreting Louisiana's employment discrimination laws, our courts have relied upon similar federal statutes and the interpreting federal jurisprudence. Thomas v. Louisiana Casino Cruises, Inc., XXXX-XXXX, p. 3 (La. App. 1 Cir. 6/25/04), 886 So.2d 468, 470, writ denied, XXXX-XXXX (La.10/29/04), 885 So.2d 598.
Although Mr. Smith asserts that Mr. Hernandez regarded him as being unable to work in a broad class of jobs, the testimony of Mr. Hernandez does not support that argument. Mr. Hernandez testified as follows:
Q. You also said you had no complaints about his quality of work, correct?
A. I have no complaints about his quality of work.
Q. How would you describe Marcus as an employee?
A. He was a fair employee.
* * *
Q. Well, at the time that Marcus was terminated, do you have any information to form a basis to believe that he could not physically drive a truck?
A. No.
* * *
Q. In fact, up until he was terminated, you had, from your own observation and knowledge, you had no reason to believe that Marcus, from a physical standpoint, couldn't do his job, correct?
A. That is correct.
* * *
Q. You didn't, at the time you terminated Marcus, you had no reason, no information to believe that he had symptoms of myotonic dystrophy that would have prevented him from physically driving a truck, correct?
A. That is true.
Q. And you certainly have no information to believe that he couldn't have done the other two-thirds work that he did on an alternative basis, correct, the physical work around the plant?
A. That is true.
Further, Mr. Hernandez testified:
As a practical matter, though, I would have assumed at that time, if nothing else . . . strictly from a practical standpoint that if this man has myotonic dystrophy, and myotonic dystrophy does affect the nerves, muscles, et cetera that it is alleged that it does, he didn't need to be driving a truck from that moment on.
*362 Clearly, the testimony of Mr. Hernandez shows that he did not regard Mr. Smith as unable to work in a broad class of jobs.
In Haase v. Bayou Steel Corp., XXXX-XXXX (La.App. 5 Cir. 3/14/01), 783 So.2d 474, writ not considered, XXXX-XXXX (La.9/14/01), 796 So.2d 670, the plaintiff suffered from color vision deficiency and claimed that his employer violated the Louisiana Civil Rights Act for Handicapped Persons (LCRHP), La. R.S. 46:2551 (the predecessor to the LEDL). Mr. Haase conceded that his condition did not substantially limit a major life activity; thus, the issue was whether his employer regarded him as having a disability that limited a major life activity. The trial court granted summary judgment in favor of the employer and the appellate court affirmed, stating:
Bayou Steel admittedly considered that Haase's CVD precluded him from the particular job of electrical technician. However, there is nothing in the exhibits that indicates Bayou Steel regarded Haase as handicapped, in the sense of believing his impairment would substantially limit "one or more of life's activities." Rather, the evidence offered in support of the motion for summary judgment established that Bayou Steel only considered that the CVD rendered Haase unable to safely perform the particular duties of the particular position in electrical maintenance for which he applied.
We conclude that the trial court correctly found that plaintiff failed to get past the threshold requirement of proving that he was handicapped as defined in the LCRHP. Therefore, it is unnecessary to analyze the remainder of the statutory provisions. The LCRHP does not apply to plaintiff in this case.
Id., XXXX-XXXX, at p. 8, 783 So.2d at 477-478.
As in the Haase case, in this case, Mr. Smith failed to show that he was "disabled" because Mr. Hernandez regarded him as unable to perform a broad class of jobs. Rather, Mr. Smith only showed that Mr. Hernandez felt it was dangerous for Mr. Smith to drive a fuel truck. This assignment of error has no merit.

ASSIGNMENT OF ERROR NO. 2
In this assignment of error, Mr. Smith asserts that the trial court erred in granting Thurman Oils' motion for summary judgment because he presented a prima facie case of prohibited employment discrimination as a qualified individual with a disability who was terminated because of his disability.
However, Mr. Smith's own testimony established that he was not disabled within the meaning of the LEDL. He testified in deposition:
Q. And you felt like in January 2000, you could still perform the essential functions of your job at Thurman Oils; is that correct?
A. Yes, sir.
Q. Myotonic dystrophy was not a problem at that time?
A. No. Still ain't.
Q. It did not impair your ability to safely drive the trucks?
A. No, sir.
Q. That's correct?
A. That's right.
Q. It did not impair your ability to walk; is that correct?
A. It didn't hurt me at all.
Q. Did it impair your ability to see?
A. No, sir.
Q. Did it impair your ability to talk?
A. No, sir.
Q. Did it impair your ability to hear?

*363 A. No, sir.
Q. Did it impair your ability to breathe?
A. No, sir.
Q. As far as you were concerned at that point, you were perfectly capable of performing the job?
A. Yes, sir.
Q. And your condition was not causing you any restrictions in your normal daily activities; is that correct?
A. No, sir.
Q. That's correct?
A. Yeah.
Q. Now, was that still, is that still the state of your condition today?
A. Yes, sir.
Q. As we sit here today, the myotonic dystrophy does not impair your daily activities?
A. No, sir.
Clearly, Mr. Smith's testimony established that he was not disabled within the meaning of the LEDL. Therefore, this assignment of error has no merit.

THE SOCIAL SECURITY DISABILITY ISSUE
While Mr. Smith's testimony showed that he was not disabled, his Social Security disability application forms presented a different picture, which he failed to reconcile with his deposition testimony. Approximately two months after his termination from Thurman Oils, Mr. Smith filed a claim for Social Security disability benefits, stating that his "lungs, and hands, [and] myotonic dystrophy" prevented him from working because he had "no hand grip, [b]ackaches, sore[n]ess of mus[c]les, inab[i]lity to lift light or heavy objects[,][n]umb[n]ess in [a]rms [and] hands." He stated that he went to the doctor on November 30, 1999, (two months prior to his termination) because of "los[s] of hand grip." He stated, "I would like to work but I can not do hard work because of my back problems and because of my low I.Q. I am handicapped [i]n most other jobs." In a supplemental application filed on March 9, 2000, Mr. Smith stated, "I am no longer able to work. I haven't found anything I can do yet . . . It is harder for me to get in and out of the bath tub because of hand and leg we[a]knes[s]  it is very hard to [button] shirt[s] and pants." Based upon his applications and his subsequent medical examination, Mr. Smith was found totally disabled and began receiving Social Security disability benefits.
In Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 806, 119 S.Ct. 1597, 1603, 143 L.Ed.2d 966 (1999), the Supreme Court stated that:
An ADA plaintiff bears the burden of proving that she is a "qualified individual with a disability"-that is, a person "who, with or without reasonable accommodation, can perform the essential functions" of her job. And a plaintiff's sworn assertion in an application for disability benefits that she is, for example, "unable to work" will appear to negate an essential element of her ADA case-at least if she does not offer a sufficient explanation. For that reason, we hold that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation. (Citation omitted.)
In Holtzclaw v. DSC Communications Corp., 255 F.3d 254, 259 (5th Cir.2001), the court affirmed the granting of a summary judgment, following Cleveland, stating:
Cleveland teaches that a plaintiff cannot change his story during litigation without a sufficient explanation for his inconsistent assertions. Holtzclaw has *364 offered no sufficient explanation for the contradiction between his disability applications and his claim that, when he re-applied for the job, he could have worked even without reasonable accommodation. He therefore has failed to create a material issue of fact of whether he is qualified for the position he sought. Because he cannot establish that element of his prima facie claim, summary judgment was appropriate on the ADA claim.
In Reed v. Petroleum Helicopters, Inc., 218 F.3d 477, 480 (5th Cir.2000), the court affirmed the granting of a summary judgment against plaintiff in an ADA claim who made assertions in her Social Security disability claim that were fundamentally inconsistent with her ability to perform her job.
In McClaren v. Morrison Management Specialists, Inc., 420 F.3d 457, 466 (5th Cir.2005), the court affirmed the granting of a summary judgment in favor of the defendant in an age discrimination ADA case where the plaintiff failed to adequately explain inconsistencies between allegations in his suit and statements in his Social Security disability claim, holding that he could not simply disavow his statements to the Social Security Administration.
In Giles v. General Electric Co., 245 F.3d 474, 485 (5th Cir.2001), the court found that statements in a Social Security benefits claim that were inconsistent with plaintiff's ADA claim required explanation by the plaintiff. The court found that the statements properly provided the basis for summary judgment if they undermined the factual assertions necessary to plaintiff's ADA claim.
In the case sub judice, Mr. Smith's statements to the Social Security Administration completely undermine his statements at deposition that he was capable of performing his job and that his condition was "inactive," and his failure to reconcile the different statements provides an additional basis for the granting of the motion for summary judgment.
Therefore, after a de novo review, the trial court judgment is affirmed. Costs of this appeal are assessed against Mr. Smith.
AFFIRMED.
WHIPPLE, J., concurs.