McClendon, j.
[2In this disability discrimination action, the plaintiff appeals the grant of summary judgment in favor of the defendant, dismissing his claims with prejudice. For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL HISTORY
The plaintiff, Ian Douglas Lindsey, was an Assistant Attorney General with the Department of Justice for the State of Louisiana from January 1980 until his termination on July 18, 2005. Mr. Lindsey’s work was primarily in the environmental law area, and at the time of his termination, he was assigned to the Public Protection Division, Environmental Section.
The facts surrounding Mr. Lindsey’s termination are essentially undisputed. In the summer of 2005, the office spaces of existing employees were being reassigned because of the hiring of new employees. Mr. Lindsey’s office was one of those being relocated. On June 15, 2005, during the move, Mr. Lindsey became hostile and belligerent and used profanities directed toward certain co-workers. When questioned later by Isabella Wingerter, Director of the Public Protection Division and his supervisor, Mr. Lindsey confirmed that he had used profanities during the incident. He also stated to Ms. Wingerter that he would “Choke the Bitch,” referring to Sonja Anderson, the co-worker who made the complaint, and that Ms. Anderson did not know who she was playing with. Ms. Wingerter referred the matter to Tris Lear, Deputy Director of the Investigations Division of the Office of Internal Affairs, and on June 16, 2005, Mr. Lindsey was interviewed by Special Agent James Betbeze and Rodley Henry, Deputy Director of the Public Protection Division. During the interview, Mr. Lindsey was advised that he could make an oral statement, but he chose not to do so. However, when questioned, he admitted using profanities towards his coworkers. Mr. Lindsey was also asked at that time to submit a typed or handwritten statement regarding the events of June 15, 2005. That same day, Mr. Lindsey was placed on administrative leave with pay pending the investigation and a determination of the appropriate course of action.
|sAs of July 15, 2005, Mr. Lindsey had not provided a written statement of the events in question, and on that date, Nicholas Gachassin, Jr., First Assistant Attorney General, contacted Mr. Lear requesting that Mr. Lindsey be terminated effective July 18, 2005.
On July 18, 2005, Mr. Lindsey met with Mr. Lear, Mr. Henry, and Judy Stout, Deputy Director of Human Resources. At the meeting, Mr. Lindsey admitted using *43 profanities on June 15, 2005. When asked if he had prepared a written statement, Mr. Lindsey stated that he had not. At that time, Mr. Lindsey was advised that he was being terminated from employment for misconduct.
Mr. Lindsey filed this lawsuit on July 14, 2006, against Charles C. Foti, Jr., individually and in his official capacity as the Attorney General for the State of Louisiana, alleging that at all relevant times he was an otherwise qualified disabled individual within the meaning of Louisiana’s Employment Discrimination Law (LEDL), LSA-R.S. 23:301, et seq. Mr. Lindsey asserted that his impairment resulted from the post traumatic stress disorder (PTSD) he sustained while fighting in combat in Vietnam. He also asserted that his supervisors were well aware of the nature and extent of his disability, but nevertheless, he was discharged for using profanity, which was merely a manifestation of his PTSD. Mr. Lindsey alleged that his disability was unrelated to his ability to perform the essential duties of his position and that he had successfully performed the duties of his position for more than twenty-five years. He further contended that profanity was prevalent in the workplace and to his knowledge no nondisabled employees were terminated for a single instance of the use of profanity. Mr. Lindsey alleged that his discharge was in violation of the LEDL, and he asked for compensatory, as well as punitive, damages, reasonable attorney fees, and costs.
Defendant answered the petition, denying the allegations. Thereafter, on January 21, 2010, defendant filed a motion for summary judgment, maintaining that defendant had a legitimate nondiscriminatory reason for Mr. Lindsey’s termination, namely his misconduct, including the failure to cooperate in the | investigation of the events of June 15, 2005. Defendant further claimed that Mr. Lindsey failed to present any evidence that his termination for misconduct was a pretext for discrimination due to Mr. Lindsey’s disability.
Following a hearing on October 25, 2010, the trial court granted defendant’s motion for summary judgment, and judgment was signed on November 8, 2010, dismissing Mr. Lindsey’s claims with prejudice. Mr. Lindsey appealed, asserting that the trial court erred in granting the motion for summary judgment and in failing to utilize the mixed motive framework in analyzing the motion.
APPLICABLE LAW
A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B. Summary judgment is favored and shall be construed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966 A(2).
The initial burden of proof remains with the movant. If the moving party will not bear the burden of proof at trial on the matter, that party’s burden on a motion for summary judgment is to point out an absence of factual support for one or more essential elements of the adverse party’s claim, action, or defense. Once the mov-ant has met his initial burden of proof, the burden shifts to the non-moving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. LSA-C.C.P. art. 966 C(2). The nonmoving party may not rest on mere allegations or denials but must set forth specific facts that show that a genuine issue of material fact remains. If the nonmoving party fails to meet this burden, there is no genuine issue of mate *44 rial fact, and the movant is entitled to summary judgment as a matter of law. Davis v. Peoples Benefit Life Ins. Co., 10-0194, p. 5 (La.App. 1 Cir. 9/10/10), 47 So.3d 1033, 1035, writ denied, 10-2440 (La.12/17/10), 51 So.3d 11; see LSA-C.C.P. art. 966 C(2).
|aAn appellate court reviews a district court’s decision to grant a motion for summary judgment de novo, using the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Davis, 10-0194 at p. 6, 47 So.3d at 1036. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is “material” for summary judgment purposes can be seen only in light of the substantive law applicable to the case. Anderson v. State Farm Fire & Cas. Ins. Co., 10-0036, p. 4 (La.App. 1 Cir. 7/16/10), 42 So.3d 1140, 1143.
With regard to the present matter, LSA-R.S. 23:323 provides, in pertinent part:
A. No otherwise qualified disabled person shall, on the basis of a disability, be subjected to discrimination in employment.
B. An employer, labor organization, or employment agency shall not engage in any of the following practices:
[[Image here]]
(2) Discharge or otherwise discriminate against an otherwise qualified disabled person with respect to compensation or the terms, conditions, or privileges of employment on the basis of a disability when it is unrelated to the individual’s ability to perform the duties of a particular job or position.
As set forth in LSA-R.S. 23:322(3), a disabled person is “any person who has a physical or mental impairment which substantially limits one or more of the major life activities, or has a record of such an impairment, or is regarded as having such an impairment.” Further, an “otherwise qualified disabled person” means a disabled person who, with reasonable accommodation, can perform the essential functions of the employment position that such person holds or desires. LSA-R.S. 23:322(8).
To defeat a motion for summary judgment against an employment disability claim, the claimant must establish a prima facie case that 1) he has a disability, as defined by the statute, 2) he is qualified for the job, and 3) an adverse employment decision was made solely because of the disability. Thomas v. Louisiana Casino Cruises, Inc., 03-1937, p. 3 (La.App. 1 Cir. 6/25/04), 886 So.2d 468, 470, writ denied, 04-1904 (La.10/29/04), 885 So.2d 598; Hook v. Georgiar-Gulf Corp., 99-2791, p. 8 (La.App. 1 Cir. 1/12/01), 788 So.2d 47, 53, writ denied, 01-1098 (La.6/1/01), 793 So.2d 200.
The Louisiana statutes are similar to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq. Thus, in interpreting Louisiana’s employment discrimination laws, our courts have relied upon similar federal statutes and the interpreting federal jurisprudence. Smith v. Thurman Oils, Inc., 06-0743, p. 4 (La.App. 1 Cir. 12/28/06), 951 So.2d 359, 361, writ denied, 07-0207 (La.3/23/07), 951 So.2d 1106; Thomas, 03-1937 at p. 3, 886 So.2d at 470.
DISCUSSION
In filing the motion for summary judgment, defendant argued that Mr. Lindsey’s termination was due to his misconduct. Defendant further claimed that Mr. Lindsey failed to establish a prima facie claim of disability discrimination under LSA-R.S. 23:323 and failed to present evidence that his termination was pretex- *45 tual for discrimination because of his PTSD.
In support of the motion, defendant offered several affidavits, including that of Mr. Lear, with his accompanying memorandum concerning the investigation, with attached employee statements. Defendant also submitted the affidavits of Mr. Ga-chassin, Ms. Anderson, Ms. Wingerter, Mr. Henry, Mr. Betbeze, and Mandy Le-Grange, a secretary who witnessed the incident on June 15, 2005. Defendant also offered a copy of an informal discussion letter by the U.S. Equal Employment Opportunity Commission regarding the ADA, the definition of disability, reasonable accommodation, and employee misconduct.
Mr. Lindsey argued, however, that PTSD is a mental disability afforded the protections of the ADA and therefore he only needed to prove that his disability played a part in defendant’s decision. He asserted that his use of inappropriate language under circumstances he perceived to be stressful was caused by his PTSD. Mr. Lindsey also contended that he was the only assistant attorney general ever terminated for inappropriate language. He also maintained that the failure to cooperate in the investigation was a non-legitimate contrived reason |7for his discharge because there was no work rule requiring him to submit a written statement.
In opposition to the summary judgment motion, Mr. Lindsey submitted a copy of extracts of his records with the U.S. Department of Veteran Affairs, the affidavit of Eric A. Whitfield, Mr. Lindsey’s treating PTSD psychiatrist in 2004 and 2005 at the VA hospital in New Orleans, the affidavit of John B. Sheppard, Jr., Mr. Lindsey’s supervisor as the Director of the Public Protection Division for more than fifteen years prior to his retirement, and excerpts from the depositions of Neomie Savoy, Human Resource Manager for the Department of Justice, Mr. Gachassin, Ms. Wingerter, and Mr. Foti, as well as excerpts from his own deposition. Mr. Lindsey also submitted a copy of the diagnostic definition of PTSD.
In granting the motion for summary judgment, the trial court, in oral reasons, initially concluded that PTSD is in fact a disability contemplated by the ADA. It then undertook the three-prong analysis required of a plaintiff in a discrimination case. The court found that Mr. Lindsey suffered from a disability and that his employer was aware of the disability. However, the court concluded that the third prong of the analysis was not met, stating that Mr. Lindsey’s discharge was “based upon safety issues and threats that were made, coupled with a refusal to cooperate.” The trial court found that there was a legitimate nondiseriminatory reason given by the defendant for the termination in this case. Once that was given, the burden shifted to Mr. Lindsey to prove that it was pretextual, and the court found no proof that the discharge was pretextual in any way. Accordingly, the trial court granted defendant’s motion for summary judgment.
Upon our de novo review of the record, we agree that summary judgment was appropriate. Once defendant pointed out the absence of an essential element of plaintiffs case, the burden shifted to Mr. Lindsey to make a prima facie case of disability discrimination under the LEDL. Because we find that Mr. Lindsey failed to show that the decision to terminate his employment was made 1 «solely because of his disability, we need not address whether he was limited in any of his major life activities and was disabled within the definition under the LEDL.
Although Mr. Lindsey argues that his misconduct was caused by his *46 disability and therefore the adverse employment action was taken because of his disability, the LEDL does not provide protection for Mr. Lindsey’s unacceptable and threatening conduct. The first circuit has adopted the position that our antidiscrimi-nation law does not insulate an employee’s emotional outbursts at work blamed on an impairment. Hook, 99-2791 at p. 12, 788 So.2d at 55.[1] See also Hamilton v. Southwestern Bell Telephone Co., 186 F.3d 1047, 1052 (5th Cir.1998). After a thorough de novo review of the record, we conclude that the basis of Mr. Lindsey’s discharge was not discrimination based on his PTSD, but was rather his inappropriate and hostile behavior in a workplace environment, as well as his failure to cooperate in the investigation. As this court recognized in Hook, Louisiana’s antidiscrimination law is not a job insurance policy, but rather a legislative scheme for correcting illegitimate inequities faced by the disabled. An employer must be permitted to terminate its employee on account of egregious misconduct, irrespective of whether the employee is disabled. The act cannot be interpreted to require an employer to accept egregious behavior by a disabled employee when that same behavior, exhibited by a nondisabled employee, would require termination. Thus, firing an employee for conduct caused by his disability is not the equivalent of firing the employee for the disability. Hook, 99-2791 at pp. 13-14, 788 So.2d at 56.
In the Hamilton case, a case factually similar to the present matter, the employee, Hamilton, verbally abused and struck a co-worker on the job. He was terminated for violating the policy on workplace violence. Hamilton filed suit under the ADA and asserted that his conduct was caused by PTSD. The Fifth |aCircuit disagreed, finding that Hamilton was not terminated because of his disability but rather because he violated his employer’s policy on workplace violence. The court stated:
Although Hamilton argues that the incident was caused by his PTSD, we are persuaded that the ADA does not insulate emotional or violent outbursts blamed on an impairment. An employee who is fired because of outbursts at work directed at fellow employees has no ADA claim.
[[Image here]]
The cause of Hamilton’s discharge was not discrimination based on PTSD but was rather his failure to recognize the acceptable limits of behavior in a workplace environment. The nature of the incident, shown by the record, presents a clear case in which Hamilton was fired for his misconduct in the workplace. We adopt for an ADA claim the well-expressed reasoning applied in the context of a protected activity-retaliatory discharge claim: the rights afforded to the employee are a shield against employer retaliation, not a sword with which one may threaten or curse supervisors. Hamilton can not hide behind the ADA and avoid accountability for his actions.
Hamilton, 136 F.3d at 1052.
In the case sub judice, Mr. Lindsey has admitted that he used profanity and made a threatening statement regarding a coworker in the workplace. Additionally, an *47 investigation was commenced, the basis of the inquiry being “To Determine if Mr. Ian Lindsey was an instrument in contributing to a Hostile Working Environment by using profanities and acting belligerent [sic] at the Workplace.” In his affidavit, Mr. Lear stated that Mr. Lindsey failed to cooperate in the initial interview on June 16, 2005, and that Mr. Lindsey was asked to make a written or typed statement containing his version of the June 15, 2005 incident. Mr. Lear further attested that as of July 18, 2005, Mr. Lindsey had not provided a statement. Mr. Henry also stated in his affidavit that on June 16, 2005, Mr. Lindsey was told that he could make an oral statement at the interview, but Mr. Lindsey chose not to do so. Whether Mr. Lindsey was discharged for the use of profanities and making a threatening statement, or for his failure to fully cooperate in the investigation, we do not find that he was discharged based on disability. Accordingly, we find no error in the grant of the defendant’s motion for summary judgment.
| ^CONCLUSION
For the above and foregoing reasons, the November 8, 2010 judgment of the trial court, dismissing Mr. Lindsey’s claims with prejudice, is affirmed. Costs of this appeal are assessed to the plaintiff, Ian Douglas Lindsey.
AFFIRMED.

. The Hook court considered a claim filed under the Louisiana Human Rights Act of 1988 (LHRA), LSA-R.S. 51:2231, et seq., which made unlawful discriminatory practices in employment. Sections 51:2242 through 2245 of the LHRA were repealed by Acts 1997 No. 1409, § 4, effective August 1, 1997, and were replaced by Sections 23:301, et seq. of the LEDL. See Pierce v. State, Office of Legislative Auditor, 07-0230, p. 12 n.3 (La.App. 1 Cir. 2/8/08), 984 So.2d 61, 70 n. 3, writ denied, 08-0542 (La.4/25/08), 978 So.2d 369.