# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 13, 2013

No. 12-20122
cons. w/
No. 12-20123

Lyle W. Cayce
Clerk

REPUBLIC OF ECUADOR; DIEGO GARCIA CARRION,

Plaintiffs-Appellants

v.

JOHN A. CONNOR,

Defendant-Appellee

CHEVRON CORPORATION,

Intervenor-Appellee

-------------------------------------------------------------------------------------------------

REPUBLIC OF ECUADOR; DIEGO GARCIA CARRION,

Plaintiffs-Appellants

v.

GSI ENVIRONMENTAL, INCORPORATED,

Defendant-Appellee

CHEVRON CORPORATION,

Intervenor-Appellee

No. 12-20122
cons. w/
No. 12-20123

---

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:11-MC-516

---

Before DAVIS, JONES and SMITH, Circuit Judges.

EDITH H. JONES, Circuit Judge:

The Republic of Ecuador ("Appellant") seeks discovery from Appellees John Connor and GSI Environmental, his company, for use in a foreign arbitration against Chevron. *See* 28 U.S.C. § 1782. During the course of extended litigation with Ecuador, Chevron,[1] an intervenor in the district court, has benefitted repeatedly by arguing against Ecuador and others that the arbitration is a "foreign or international tribunal." Because Chevron's previous positions are inconsistent with its current argument, judicial estoppel is appropriate to make discovery under § 1782 available to Ecuador. The district court's order is REVERSED and REMANDED for determination of the scope of discovery.

## INTRODUCTION

Chevron, as successor to Texaco, became embroiled in litigation over the alleged environmental contamination of oil fields in Ecuador. The litigation spans nearly two decades and dozens of courts. A court in Lago Agrio, Ecuador finally issued a multi-billion dollar judgment against Chevron. During the *Lago Agrio* litigation, Chevron filed for arbitration under the rules of UNCITRAL, as allowed by the US-Ecuador Bilateral Investment Treaty ("BIT"). Chevron

---

[1] Appellees here are deemed to be in privity with Chevron.

No. 12-20122
cons. w/
No. 12-20123

charged that miscarriages of justice in the Ecuadorian courts and participation by Ecuador in the plaintiffs' fraud violated its rights. Ecuador applied to the district court for ancillary discovery from Appellees for use in the arbitration and Chevron intervened to protect its interests.

In connection with the BIT arbitration and ongoing *Lago Agrio* litigation in Ecuador, both parties have repeatedly sought discovery through United States courts pursuant to §1782. At least twenty such orders have been issued on behalf of Chevron. No previous discovery request has been denied on the grounds raised in the district court here—that the BIT arbitration is not an "international tribunal." The district court, however, felt compelled by prior Fifth Circuit decisions to deny Ecuador's discovery request. Following those cases, the court concluded, the BIT arbitration represents a bilateral investment dispute that is not pending in a "foreign or international tribunal" as the statute requires. *See Republic of Kazakhstan v. Biedermann Int'l*, 168 F.3d 880 (5th Cir 1999); *El Paso Corp. v. La Comision Ejecutiva Hidroelectrica del Rio Lempa*, 341 F.App'x 31 (5th Cir. 2009).

## DISCUSSION

On appeal from the denial of its discovery request, Ecuador asserts that the BIT arbitration is indeed a foreign proceeding covered by the statute but, in the alternative, that Chevron, having benefitted repeatedly from agreeing to this assertion, should be judicially estopped to deny it now when discovery would aid its bitter opponent. Because the underlying facts are not in dispute, we review the district court's order *de novo*. *Biedermann*, 168 F.3d at 881.

3

No. 12-20122
cons. w/
No. 12-20123

Judicial estoppel is an equitable doctrine designed to protect the integrity of judicial proceedings by preventing litigants from asserting contradictory positions for tactical gain. The precise rationale for and consequences of the doctrine vary. 18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4477 (2d ed. 2002 & Supp. 2012) [hereinafter "WRIGHT & MILLER"]. Recognizing this, the Supreme Court examined the doctrine extensively in *New Hampshire v. Maine*, 532 U.S. 742, 121 S. Ct. 1808 (2001), but in the end refused to establish an "inflexible formula." Relying instead on several factors that often indicate the propriety of the sanction, the Court held that a party may be estopped from asserting a position in a judicial proceeding where it has previously persuaded a court to adopt a clearly contrary position to the disadvantage of an opponent. *See also Reed v. City of Arlington*, 650 F.3d 571 (5th Cir. 2011) (en banc). *Reed* also notes, "Because judicial estoppel is an equitable doctrine, courts may apply it flexibly to achieve substantial justice." *Id.* at 576.

The predicate for the exercise of judicial estoppel against Chevron is easily described. To promote international dispute resolution and comity, § 1782 authorizes federal district courts to issue discovery orders ancillary to proceedings in "foreign or international tribunals."[2] In numerous district courts, and on appeal in other circuits, Chevron asserted that the BIT arbitration is an international proceeding. Chevron explicitly distinguished this court's

---

[2] 28 U.S.C. § 1782(a) provides in pertinent part: "The district court of the district in which a person resides . . . may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. . . ."

No. 12-20122
cons. w/
No. 12-20123

*Biedermann* decision as involving a purely "private" international arbitration between the Republic of Kazakhstan and an investor company. Chevron denies neither that it made these assertions, nor that its current position on the arbitration's status is precisely contrary, nor that it successfully obtained § 1782 discovery orders over Ecuador's opposition.[3] Why shouldn't sauce for Chevron's goose be sauce for the Ecuador gander as well?

Chevron challenges the basis for equitable estoppel, however, on numerous grounds. First, it contends, asserting contrary positions on a question of law—whether the BIT arbitration pends in an "international tribunal"—is not amenable to judicial estoppel under Supreme Court and binding Fifth Circuit authority. Second, and relatedly, the *Biedermann* decision afforded Chevron a basis in this circuit alone for a justifiable contrary legal argument. Third, Chevron did not "profit" unfairly from its contrary position in other courts because § 1782 discovery was sought, and allowed, on the separate basis that it was for use in the Ecuadorian *Lago Agrio* litigation before a "foreign tribunal." Chevron's final argument asserts that the nature of the tribunal is a "jurisdictional" element of § 1782 that cannot or should not be settled by estoppel.[4] We address each of these arguments.

Because federal courts may only act according to constitutional and statutory delegations of authority, we are constrained to consider Chevron's

---

[3] The opposition centered not on the availability of § 1782 but on various conventional privileges against discovery.

[4] Chevron also contends § 1782 discovery should be denied because it could be compelled by the arbitration panel. We leave this question for resolution on remand.

No. 12-20122
cons. w/
No. 12-20123

jurisdictional argument at the outset despite its being an afterthought in the company's brief. Chevron notes that "principles of estoppel do not apply" to issues of subject matter jurisdiction. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 US 694, 702, 102 S. Ct. 2099, 2104 (1982).[5] Chevron then asserts, without supporting authority, that if the BIT arbitration is not before a "foreign or international tribunal," then federal courts lacked the power to order ancillary discovery.

Whether Chevron's premise applies here is questionable, and in any event its proposed conclusion does not follow from the premise. Describing a federal court's authority under § 1782 as "jurisdictional" fits awkwardly with conventional Article III terminology. Normally, federal court jurisdiction reflects the courts' power to decide cases or controversies between contending parties. Significantly, a § 1782 application may or may not be adversarial. The federal court addresses an interlocutory discovery application that is ancillary to a non-domestic proceeding. Its § 1782 order "adjudicates" nothing else. Perhaps in recognition that Congress delegated a quasi-administrative role to the courts in § 1782, the Supreme Court discussed the scope of a court's "authority"—not its

---

[5] *See In re Sw. Bell Tel. Co.*, 535 F.2d 859, 861 (5th Cir. 1976), modified by, 542 F.2d 297 (5th Cir. 1976) (en banc), rev'd on other grounds sub nom. *Gravitt v. Sw. Bell Tel. Co.*, 430 U.S. 723, 97 S. Ct. 1439 (1977); *see also Int'l Union of Operating Eng'rs v. Cnty. of Plumas*, 559 F.3d 1041, 1044 (9th Cir. 2009) ("[E]ven though the County asserted subject matter jurisdiction in its removal notice, it is not precluded from challenging subject matter jurisdiction on appeal."); *Creaciones Con Idea, S.A. de C.V. v. Mashreqbank PSC*, 232 F.3d 79, 82 (2d Cir. 2000) ("[A]ssertions . . . in unrelated cases therefore could not preclude . . . the defendant from arguing . . . that diversity jurisdiction was absent in this case."). *But cf. Lydon v. Boston Sand & Gravel Co.*, 175 F.3d 6, 12–14 (1st Cir. 1999) (holding party that prevailed after entering stipulation before labor arbitrator estopped from asserting exclusive federal jurisdiction).

No. 12-20122
cons. w/
No. 12-20123

"jurisdiction"— under the statute. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246, 124 S. Ct. 2466, 2472 (2004). *Intel*, like this case, required statutory construction to interpret § 1782's terms, the identity of the "interested person" who may apply for discovery and the status of the foreign "proceeding." Further, Chevron cites no case that has identified the criteria for hearing a § 1782 application as "jurisdictional."[6]

Not only does the unusual role of a federal court under § 1782 suggest that "jurisdictional" thinking is misplaced, but even if "jurisdiction" is at issue, the best approach is to treat jurisdiction as conflated with the merits of the application. A helpful analogy may be drawn to *Bell v. Hood*, 327 U.S. 678, 66 S. Ct. 773 (1946), and its progeny.[7] Such cases explain that when a claim facially seeks relief "arising under" the Constitution, it confers federal court § 1331 jurisdiction even though the claim may later be denied. The federal court has jurisdiction to determine whether the claim is cognizable. So, here, the court has "jurisdiction" over an application that alleges a non-frivolous "claim" for § 1782 discovery, and the court must have power to interpret the statutory terms relevant to its power. We reject the contention that the status of the BIT

---

[6] Chevron did not cite *Al Fayed v. CIA*, 229 F.3d 272, 273 (D.C. Cir. 2000), an appeal from a district court's decision that it "lacked jurisdiction" to issue a § 1782 subpoena. The D.C. Circuit affirmed quashing the subpoena without approving the jurisdictional language. Paradoxically, if the BIT arbitration is, contrary to Chevron's earlier assertions, a private arbitration, and if this determination is "jurisdictional," discovery orders Chevron obtained in other jurisdictions might well be void. *See Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 362 (2d Cir. 2000).

[7] *See, e.g.*, *Williamson v. Tucker*, 645 F.2d 404, 415–16 (5th Cir. 1981) (noting the "strict standard for dismissals for lack of subject matter jurisdiction when the basis of jurisdiction is also an element in the plaintiff's federal cause of action").

arbitration under § 1782 raises an issue of jurisdiction to which judicial estoppel may not apply.

Invoking a footnote in a Fifth Circuit case, and a century-old Supreme Court case, Chevron next contends that judicial estoppel may never be applied to issues of law. In *Sturm v. Boker*, 150 U.S. 312, 14 S. Ct. 99 (1893), the Supreme Court held that a party's testimony concerning the extent of his legal ownership of goods, in a case controlled by contract language, was no more than a "statement of opinion upon a question of law" that may not act as an estoppel against the declarant. *Id.* at 336, 14 S. Ct. at 107. *Sturm* was cited by this court in a footnote, which states in full: "As Royal properly argues, a statement of opinion on the law does not create a judicial estoppel." *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 3 F.3d 877, 885 n.6 (5th Cir. 1993) (citing *Sturm*). These decisions are inapposite.

Notwithstanding our subordination to Supreme Court authority, we are convinced that *Sturm* is not controlling. The application of estoppel in *Sturm* was both fact-specific and case-specific. *Sturm*'s discussion of estoppel is sufficiently ambiguous that it does not clearly reach judicial estoppel—perhaps this is why *New Hampshire v. Maine* does not cite *Sturm*. To hold that *Sturm* prevents judicial estoppel from being applied to any question of law goes too far, just as the Court itself said, "it would be pressing [the complainant's] language too far to hold that he made any positive statement to the effect that he was the absolute owner of the goods . . . ." *Sturm,* 150 U.S. at 334, 14 S. Ct. at 106. Indeed, the Court's holding may be better explained on the principle that estoppel may only apply where an offending party's positions were "clearly"

8

No. 12-20122
cons. w/
No. 12-20123

contradictory. *New Hampshire*, 532 U.S. at 750, 121 S. Ct. at 1815. Even more pertinent here, the Supreme Court did not limit judicial estoppel in *New Hampshire*, which refers to contrary "positions," not to contrary "factual positions," as the foundation of the doctrine. *Id.*, 121 S. Ct. at 1814.

As for *Royal*, the footnote may be understood to note that, by themselves, a party's contrary statements of opinion on the law are insufficient for judicial estoppel. There is no indication that the party persuaded a court to adopt its contrary position or that, in so doing, it gained an inequitable advantage.[8] Moreover, two of this court's decisions after *Royal* held a party estopped by its previous litigating positions from taking advantage of an opponent by a tactical legal shift. *See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 293–94 (5th Cir. 2004) (imposing judicial estoppel to preclude Pertamina from arguing against the application of Swiss procedural law); *Bogle v. Phillips Petroleum Co.*, 24 F.3d 758, 762 (5th Cir. 1994) (noting availability of judicial estoppel to prevent plaintiffs from resurrecting claims in state court that were nonsuited by plaintiffs' motion in federal court). From the standpoint of equity, as most federal courts recognize, a change of legal position can be just as abusive of court processes and an opposing party as deliberate factual flip-flopping. WRIGHT & MILLER urges "thoughtful inquiry"

---

[8] WRIGHT & MILLER observes that only a minority of circuit courts seem to resist applying judicial estoppel to a party's legal positions. WRIGHT & MILLER § 4477 n.76, at 595 & Supp. at 198–99 (citing *United States v. Villagrana-Flores*, 467 F.3d 1269, 1278–79 (10th Cir. 2006); *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 274 (4th Cir. 2003); *Pittston Co. v. United States*, 199 F.3d 694, 701 n.4 (4th Cir. 1999); *Tenneco Chems., Inc. v. William T. Burnett & Co.*, 691 F.2d 658, 664–65 (4th Cir. 1982)).

No. 12-20122
cons. w/
No. 12-20123

because contrary legal positions may be defensible, for instance, when driven by an intervening change in governing law or by underlying differences in the applicable bodies of law. WRIGHT & MILLER § 4477 n.82 and accompanying text, at 598–99. Because there is no compelling reason to conclude that judicial estoppel is never allowed to sanction a party's unfair change of legal positions, we cannot accept Chevron's argument.

More narrowly, Chevron contends that "there is nothing inconsistent about following the law of the circuit—even if the law may be different in another circuit." None of the cases it cites stand for this proposition, and our research has found no support. It is true that parties may, without fear of judicial estoppel, adopt different technical positions based on the existence of different applicable bodies of law (*e.g.*, state versus federal tax law). *See Folio v. City of Clarksburg*, 134 F.3d 1211, 1217–18 (4th Cir. 1998) (recognizing the appropriateness of classifying a fee as a "tax" for purposes of the Tax Injunction Act and a "fee" for state-law purposes). What Chevron did was pursue a strategy of obtaining § 1782 discovery in multiple jurisdictions on the basis, in part, that the BIT arbitration is an "international tribunal" and this circuit's *Biedermann* decision is distinguishable, only to disavow that position entirely when Ecuador sought discovery in this circuit. The facts have not changed and, as Chevron itself admits, the legal standard under § 1782, a federal statute construed in a federal court system, must ultimately be uniform. Chevron's brief acknowledges the existence, in the prior applications for discovery, of "the same underlying legal question: whether or not § 1782 should be construed to authorize discovery for use in arbitration." Notwithstanding the potential for circuit conflicts, the

No. 12-20122
cons. w/
No. 12-20123

interpretive issue here is not governed by two distinct bodies of law. Following the "law of the circuit" is not, in this case, an antidote to judicial estoppel where the doctrinal criteria otherwise apply.

The only remaining doubt about the availability of judicial estoppel is that Chevron's inconsistent argument may have been "irrelevant" to the discovery orders in prior cases. Because the parties' disputes have involved both Ecuadorian court litigation (unquestionably, a "foreign tribunal") and the BIT arbitration (arguably, an "international tribunal"), Chevron's § 1782 discovery requests were often premised on twin grounds. We have found no authority suggesting that "harmless error," or some variety thereof, is not among the equitable considerations underlying judicial estoppel, but we do not reach the question here. A review of many of the courts' orders shows that they rested on the twin § 1782 grounds for authorizing discovery, in part because Ecuador never challenged that the BIT arbitration is an "international tribunal." A recent Third Circuit decision, in particular, notes repeatedly that although certain of Ecuador's objections to discovery might be meritorious if related to the *Lago Agrio* litigation alone, "Chevron seeks the § 1782 discovery for use in both the *Lago Agrio* litigation and the BIT arbitration." *In re Application of Chevron Corp.*, 633 F.3d 153, 161, 163 (3d Cir. 2011). Chevron profited from being able to assert mutually reinforcing grounds under § 1782 to support its discovery requests; the courts were persuaded that whether "for use" in the Ecuadorian court proceedings or the arbitral tribunal, Chevron's requests satisfied § 1782. The status of the BIT arbitration was not irrelevant to Chevron's success.

No. 12-20122
cons. w/
No. 12-20123

The result of rejecting these objections is clear.  Chevron has deliberately taken inconsistent positions on the availability of § 1782 discovery for use in "international tribunals."  Chevron successfully obtained such discovery by persuading courts to reject Ecuadorian (and related parties') objections and by contending, opposite to its current position, that the BIT arbitration is an "international tribunal."  Finally, if Chevron is permitted to shield itself under *Biedermann* against Ecuador's current discovery request, it will have gained an unfair advantage over its adversary.  Chevron should be judicially estopped from asserting its legally contrary position here.  Consequently, we need not and do not opine on whether the BIT arbitration is in an "international tribunal."  On remand, the district court should proceed in its discretion to evaluate Ecuador's request for discovery pursuant to § 1782.

## CONCLUSION

The order of the district court is **REVERSED** and the appeal **REMANDED** for further proceedings consistent herewith.