**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 11, 2013

Lyle W. Cayce
Clerk

No. 12-30843

SUE BELL,

Plaintiff - Appellant

v.

HERCULES LIFTBOAT COMPANY, L.L.C.,

Defendant - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
No. 3:11-CV-332

Before KING, HIGGINBOTHAM, and CLEMENT, Circuit Judges.
PATRICK E. HIGGINBOTHAM, Circuit Judge:[*]

In 2011, Sue Bell sued Hercules Liftboat Co., LLC ("Hercules"), claiming that the company fired her because of her disability in violation of the Louisiana Employment Discrimination Law ("LEDL"). The district court awarded

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-30843

summary judgment to Hercules on the ground that Bell was not "otherwise qualified" within the meaning of the statute, reasoning that by her own words, she performed her work only by delegating it to two subordinates. We affirm.

## I.

In March 2007, Hercules hired Sue Bell to serve as the cost controller/estimator in its Gulf of Mexico Dry Dock Department, located in Lafayette, Louisiana. In November 2009, Bell was diagnosed with breast cancer. Following successful surgery in March 2010, Bell went on disability leave. In July 2010, Bell returned to work cancer-free but on a five-year medication regimen. She later testified that her medication "made it, basically, impossible to work," causing her to delegate her job responsibilities to her two subordinates.

In January 2011, Hercules advised Bell that it was eliminating her position. Bell sued Hercules in state court, claiming that it had fired her because of her medical disability in violation of the LEDL. The statute provides that "[n]o otherwise qualified disabled person shall, on the basis of a disability, be subjected to discrimination in employment,"[1] defining an "otherwise qualified disabled person" as "a disabled person who, with reasonable accommodation, can perform the essential functions of the employment position that such person holds or desires."[2] Hercules removed Bell's action to federal court.

In her original complaint, Bell pleaded the required elements of a LEDL claim, alleging that Hercules had terminated her because of her cancer and cancer treatment, and that it had "refused to reasonably accommodate her

---

[1] LA. REV. STAT. § 23:323(A).

[2] *Id.* § 23:322(8). The statute also provides that a "reasonable accommodation means an adjustment or modification . . . which would not impose an undue hardship on the employer," *id.* § 23:322(9), and that "essential functions" include only "the fundamental job duties of the employment position[,] . . . not marginal functions of the position," *id.* § 23:322(5).

disability although [it] had the means to [do so]." However, in September 2011, Bell amended her complaint to add ERISA claims against Hercules and its parents and insurers — claims upon which Bell apparently thought she could succeed by demonstrating that she was completely unfit to work after returning to Hercules in July 2010.[3]

In her amended complaint and subsequent pleadings, Bell represented, among other things, that her post-cancer medical treatment "nearly destroyed . . . [her] concentration skills;" that "because of [her] health issues, [she] was attempting to have her subordinate[s] . . . perform . . . her job duties;" that she was "unable to perform all the material duties of [her] regular occupation;" that she was "not able to perform eighty percent of her job duties;" and that "the medical evidence is undisputed that . . . [she] was disabled from the time she began treating [sic] for cancer in early 2010." In an affidavit attached to one of the pleadings, Bell's professional acquaintance attested that Bell's "difficulty with her vision and headaches . . . incapacitates any function on computers;" that Bell "is experiencing inability to mentally focus on any detail [sic] matter;" that Bell is "not employable;" and that Bell has suffered her symptoms "without resolve" since she began taking post-cancer medication in the spring of 2010.

Moreover, in her deposition, Bell acknowledged that she was "not able to perform any job . . . since [she] started on [her] post cancer medications;" that the side-effects from the medication "made it, basically, impossible to work;" that without her two subordinates, she "wouldn't have been able to accomplish anything;" that "basically, [her] job was getting done because of [them];" that she would be "completely unable to do any kind of work for at least the next three-

---

[3] As the district court observed, Bell's efforts were futile, based on a misapprehension of Hercules's ERISA-governed insurance plan. While Bell would have been entitled to disability coverage if she could demonstrate that, upon returning to Hercules, she (i) could not perform her job duties *and* (ii) earned less than 80% of her pre-disability salary, there is no evidence that Bell's salary changed as a result of her disability leave.

No. 12-30843

plus years because [she was on] a five year course of treatment;" and that after being terminated, she concluded she was ineligible for employment assistance because "you have to be ready, willing, and able to go to work and I knew I couldn't honestly do that."

In February 2012, the district court dismissed Bell's ERISA claims against the Hercules defendants and granted summary judgment to the insurers, leaving Hercules as the sole defendant. In June, Hercules moved for summary judgment on Bell's LEDL disability discrimination claim, urging that the record conclusively established that Bell was not "otherwise qualified" at the time of her termination. The district court agreed and granted Hercules's motion, reasoning that "[Bell's] numerous admissions establish beyond dispute that her utility had diminished to the point that she could not perform her job functions without the employees working under her doing substantially all of the work, reducing Bell to a supervisory capacity." The court also observed that Bell failed to "proffer what type of reasonable accommodation might have been implemented," noting that though Bell "presumably . . . want[s] to maintain the status quo of having two employees perform her job duties for her," such an arrangement could not reasonably be demanded of an employer. Bell appeals only her LEDL claim.[4]

## II.

This Court reviews a district court's award of summary judgment *de novo*, applying the same standard as the district court.[5] "Summary judgment is proper if the evidence shows that there is no genuine issue as to any material fact and

---

[4] Below, Bell also asserted claims for retaliation, unpaid wages, and intentional infliction of emotional distress. However, as Bell does not brief or mention these claims on appeal, they are waived.

[5] *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 313 (5th Cir. 2007).

that the moving party is entitled to judgment as a matter of law."[6]  Though the moving party bears the burden of establishing the absence of a genuine fact issue, it can discharge this obligation by pointing out that the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."[7]  The burden then shifts to the non-movant to "produce evidence or designate specific facts showing the existence of a genuine issue for trial."[8]  The non-movant cannot rely on naked, unsubstantiated allegations to survive summary judgment.[9]

## III.

To establish a disability discrimination claim under the LEDL, a plaintiff must show, among other things, that she was (1) "disabled" and (2) "otherwise qualified" at the time of the complained-of employment action.[10]  Here, Hercules-

---

[6] *Id.*

[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[8] *Engelstrom v. First Nat. Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322–34); *see also Celotex*, 477 U.S. at 324 ("In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'").

[9] *Grimes v. Tex. Dep't. of Mental Health and Mental Retardation*, 102 F.3d 137, 139–40 (5th Cir. 1996) (collecting cases).

[10] *E.g.*, *Lindsey v. Foti*, 81 So. 3d 41, 44 (La. Ct. App. 2011).  The plaintiff must also establish that her employer took the adverse employment action "because of [her] disability." *Hook v. Georgia-Gulf Corp.*, 788 So. 2d 47, 53 (La. Ct. App. 2001).  As the LEDL essentially tracks the Americans with Disabilities Act ("ADA"), both parties appear to assume that the *McDonnell-Douglas* burden-shifting framework should govern our summary judgment analysis on this ultimate question of intentional discrimination. *Cf. Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) (applying *McDonnell-Douglas* framework to ADA claim).  Alas, it is not clear that Louisiana courts apply *McDonnell-Douglas* to LEDL disability discrimination claims. *See, e.g.*, *Lindsey*, 81 So. 3d at 44; *Hook*, 788 So. 2d at 53.  But we need not address this complication today, as we can decide the case on the threshold ground that Bell is not "otherwise qualified" — a showing she must make whether or not *McDonnell-*

No. 12-30843

concedes that Bell was disabled but argues that her admissions preclude her from demonstrating that, at the time of her termination, she could "perform the essential functions of [her] employment position" with "reasonable accommodation" — as required to render her "otherwise qualified."

Federal courts have confronted essentially the same argument in suits brought under the Americans with Disabilities Act ("ADA"), in which a plaintiff bears the initial burden of proving that she could, "with or without reasonable accommodation, . . . perform the essential functions of [her] employment position."[11] In *Cleveland v. Policy Management Systems Corp.*,[12] the Supreme Court held that while an employee's representation of "total disability" in an application for Social Security Disability Insurance ("SSDI") benefits does not automatically estop her from subsequently filing an ADA suit, "[she] cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim[,] [but] must proffer a sufficient explanation."[13] In *Reed v. Petroleum Helicopters Inc.*,[14] this Circuit clarified its understanding of *Cleveland*, observing that while an employee's boilerplate representation of "total disability" in a benefits application "may be a legal conclusion" that can, through an adequate explanation, be reconciled with a subsequent ADA suit,[15] an employee's "specific factual statements" that she was unable to perform her essential job duties at the time of the adverse employment action entitle the employer to

---

*Douglas* applies. *Compare Daigle*, 70 F.3d at 396, *with Hook*, 788 So. 2d at 53.

[11] 42 U.S.C. § 12111(8).

[12] 526 U.S. 795 (1999).

[13] *Id.* at 806.

[14] 218 F.3d 477 (5th Cir. 2000).

[15] *Id.* at 479.

summary judgment, at least absent a particularized showing that reasonable accommodations were possible.[16]

A recent Louisiana appellate decision, *Smith v. Thurman Oils, Inc.*,[17] indicates that Louisiana courts will follow *Cleveland* and its Fifth Circuit progeny in assessing whether a plaintiff is "otherwise qualified" under the LEDL.[18] The plaintiff in *Smith* represented in an SSDI application that his myotonic dystrophy prevented him from functioning as a trucker, claiming that he had "no hand grip, backaches, soreness of muscles, inability to lift light or heavy objects, [and] numbness in [his] arms and hands."[19] Relying on *Cleveland*, *Reed*, and other federal ADA cases, the *Smith* court concluded that the plaintiff's representations in his application for SSDI benefits "completely undermine his statements at deposition that he was capable of performing [the essential duties of] his job," and that his "failure to reconcile the different statements provides a[] . . . basis for granting of the motion for summary judgment."[20]

Here, the unchallenged employment description for Bell's former position provides that her "[e]ssential [d]uties" included:

> supervis[ing] all dry dock management protocols, conduct[ing] daily communications and support to all dry dock vessel managers and dry dock personnel, conduct[ing] daily analytical review of all project tracking software[] and hard copy file tracking, supervis[ing] all electronic and hard copy files, perform[ing] daily reporting and support to field personnel and management, [and] resolv[ing] issues

---

[16] *Id.* at 479–80.

[17] 951 So. 2d 359 (La. Ct. App. 2006).

[18] *See id.* at 363–64; *see also*, *e.g.*, *Thomas v. La. Casino Cruises, Inc.*, 886 So. 2d 468, 470 (La. Ct. App. 2004) (noting that the LEDL is "similar to the Americans with Disabilities Act," and that "[Louisiana] courts have relied upon [the ADA] and the interpreting federal jurisprudence" in construing the LEDL).

[19] 951 So. 2d at 363 (internal alterations omitted).

[20] *Id.* at 364.

No. 12-30843

to improve project cost and time efficiency while improving vessel assets.

Yet according to Bell's pleadings, testimony, and exhibits, her post-cancer medical treatment "nearly destroyed . . . [her] concentration skills," "incapacitated any function on computers," and rendered her "unable to perform all the material duties of [her] regular job," "[un]able to perform eighty percent of her job duties," and "[un]able to perform any job."

Bell attempts to bridge the inconsistency between these detailed factual admissions and her current litigation posture by noting that she returned to work in June 2010, which, according to Bell, demonstrates that she was able to function in her job "with the accommodation of her underlings."  But as this Court has observed in the ADA context, the mere fact that an employee is "physically able to return to work" does not establish her as "qualified" for purposes of defeating an employer's motion for summary judgment.[21]  Moreover, the fact that Bell's subordinates "perform[ed] [her] job duties" after she returned to Hercules is hardly evidence that the company could have furnished reasonable accommodations; rather, "if [an employee] can't perform the essential functions of [her] job absent assigning those duties to someone else . . . [,][she] cannot be reasonably accommodated as a matter of law."[22]  Under *Cleveland* and its Fifth Circuit and Louisiana state court progeny, Hercules is entitled to summary judgment.[23]

---

[21] *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 258–59 (5th Cir. 2001).

[22] *Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 295 (5th Cir. 1998).

[23] Indeed, Hercules has a stronger case than the employers in *Reed* and *Smith*. Whereas the plaintiffs in those cases made their inconsistent representations in SSDI applications to the Social Security Administration, Bell made the vast majority of her admissions in pleadings, exhibits, and testimony she submitted *in this litigation* to support her now-defunct ERISA claims.  Bell's representations thus not only serve as evidence that she cannot satisfy a necessary element of her LEDL case, but arguably estop her from claiming otherwise in this appeal.  *See, e.g.*, *Ecuador v. Connor*, — F.3d — , 2013 WL 539011 at *1 (5th

No. 12-30843

## IV.

We AFFIRM the judgment of the district court.

---

Cir. 2013) ("[A] party may be estopped from asserting a position in a judicial proceeding where it has previously persuaded a court to adopt a clearly contrary position to the disadvantage of an opponent.") (citation omitted).