342 F.Supp. 212 (1972)
INTERNATIONAL ORGANIZATION MASTERS, MATES AND PILOTS OF AMERICA, LOCAL NO. 2, an unincorporated organization by Edmund H. Stoughton, et al., Plaintiffs,
v.
INTERNATIONAL ORGANIZATION MASTERS, MATES AND PILOTS OF AMERICA, INC., a corporation, et al., Defendants,
and
Trustees of International Organization Masters, Mates and Pilots of Pension and Welfare Plan, a Trust, Added Party Defendant.
Civ. A. No. 71-2940.
United States District Court, E. D. Pennsylvania.
May 1, 1972.
*213 Kip D. Denega, Jr., Philadelphia, Pa., for plaintiff.
James J. Leyden, Philadelphia, Pa., Howard Ganz, New York City, for employer-designated trustees of added party defendant.
Richard H. Markowitz, Philadelphia, Pa., for defendant.
Melvin A. Bank, Philadelphia, Pa., for Union-designated trustees of added party defendant.

MEMORANDUM AND ORDER
FULLAM, District Judge.
The issue before the Court is whether an action removed to this Court should be remanded to the state court.
In 1956, the twelve individual plaintiffs commenced an action in the Court of Common Pleas of Philadelphia County, alleging their improper expulsion from membership in the defendant International Organization of Masters, Mates and Pilots (IOMMP) of America and its Local No. 2. That court determined in 1970 that defendants were liable, and proceedings commenced on the issue of damages. With the encouragement of the court, eleven of the plaintiffs agreed to a settlement, providing that the defendants would make payments to the IOMMP Pension Plan (Plan) sufficient to allow plaintiffs to receive the pensions to which they would have been entitled had they not been expelled from the union. The court's approval of the settlement was made contingent on acceptance of its terms by the Trustees of the Plan. No approval was forthcoming; the Trustees' vote was evenly divided, the union-designated Trustees voting affirmatively and the employer-designated Trustees negatively.[1] Six of the plaintiffs then sought to join the Trustees as "added party defendants." The court approved, and a complaint was served, seeking to require the Trustees to accept the union's contributions, and to pay pensions to plaintiffs. The employer-designated Trustees filed a removal petition in this Court, alleging that the cause of action set forth in the new complaint would, if sued upon alone, fall within the Court's original jurisdiction. The union (original defendant), the union-designated Trustees, and the six plaintiffs who sued the Plan have moved to remand on the grounds that (1) not "all defendants" have joined in the removal petition, as the removal statute requires, 28 U.S.C. §§ 1441(a), 1446(a) (1970); 1A J. Moore's Federal Practice, ¶ 0.168[3.-2] (1965) [hereinafter Moore], and (2) that the cause of action sought to be removed is ancillary to state proceedings and, under a judicially-created exception to the removal statute,[2] nonremovable. I believe that the latter contention is meritorious, and therefore, need not consider the former.
The policies underlying the rule against removal of ancillary causes of action are nowhere well-articulated. Several can be discerned or imagined, however. A party should not, as a general principle,[3] be permitted to relitigate a state court action in the equivalent *214 federal court.[4] The notion of comity between state and federal courts also supports the view that a court should have control over its own process, including its mode of execution.[5] Bifurcation of a case into two forums might do it "practical violence."[6] From a pragmatic viewpoint, it "would be wasteful to have the appendage in federal court when the principal claim is being litigated in state court."[7] The state courts may have more expeditious methods for adjudicating issues bearing on matters already sub judice.[8] Finally, it might be thought unduly burdensome for a federal court to be forced to concern itself with sometimes minor matters (e. g., garnishment) arising out of state court proceedings.
Many formulations of a rule, but perhaps inevitably, no useful working definitions of "ancillary," have been suggested. To be removable, an action must be "independent," not "supplementary or incidental to another action." 1A Moore, ¶ 0.157[4.-11] at 170. It must be "practically severable," so as not to do "practical violence." Id. at 173. It must not be a "mere mode of execution or of relief, inseparably connected with the original judgment or decree"; but a "supplemental proceeding [which] in fact involves an independent controversy with some new and different party" may be removed. Buford & Co. v. Strother & Conklin, 10 F. 406, 407 (D.Iowa 1881). The mere fact that a controversy had its origin in a state action does not require remand; the issue is whether it is a "separate suit." 1A Moore, ¶ 0.157[4.-11] at 171.
The cases are few, old, and sometimes difficult to reconcile. It is not surprising that research discloses no precedent squarely in point. The garnishment cases, constituting the most numerous category of "ancillariness" decisions, provide the closest analogy. The courts are hopelessly divided in their results and reasoning however,[9] some looking to state law to determine whether garnishment is regarded as ancillary or independent,[10] others making their own independent judgment, informed, but not concluded, by the states' characterization,[11] *215 and in both cases, coming out on both sides of the issue of removability.
I cannot regard state court determinations of ancillariness as conclusive. The removal statutes create a federal right the enjoyment of which states by mere semantic alteration without any real substantive change should not be permitted to prevent.[12] Accordingly, I do not give controlling weight to the fact that the trial court permitted joinder of the Plan in the principal action, rather than requiring the institution of a separate suit. Substance, rather than form, must govern, but substantially the two causes of action are so closely intertwined that removal of one without the other would "do practical violence" to the entire action.[13] Surely, the parties to the two causes of action are different, and the alleged wrongful acts of the two sets of defendants are in no way similar, but this alone is insufficient to establish nonancillariness; the same can be said about most garnishment proceedings and, as has been seen, the question of their removability is hardly a settled one.[14] The employer-designated Trustees seem to rely upon the novelty of the claim asserted against the Plan as a basis for removal: the complaint against it seeks damages although no liability has been established. It should be borne in mind that in garnishment proceedings, the garnishee's liability to the defendant is not always free from question. That the alleged basis for the Plan's liability in the present case does not fall neatly into such a well-defined category as contract or tort does not strengthen the case for removal. The merits are not before me, and reliance on the assumption that liability is unlikely to be established might prove to be misplaced.
The "practical violence" which might result from a holding of removability relates to the state court's power to fashion a remedy for the wrong committed against the plaintiffs. Certainly the court could order the payment of monetary damages, or it could require the defendant union to purchase commercial annuities for the plaintiffs. But plaintiffs have sought a different remedy, one which might (or might not) be more appropriate on these facts. The cause of action is state-created; so must the remedy be. I am not aware of any factor making Plan pensions more desirable than cash or annuities, but neither is there evidence in the record to the contrary; the point is that these matters are none of this Court's concern. There are practical considerations, also. I can conceive of cases in which the propriety or nature of the pension remedy might depend upon the evidence adduced at the trial on the issue of liability (assuming arguendo that such a remedy is ever appropriate); for example, requiring the Plan to pay pensions to improperly expelled union members might be more appropriate when the grounds for expulsion were so frivolous as to put the employer on notice that subsequent reinstatement by court order was likely. Bifurcation *216 might result in duplication of proof. Finally, it is worth noting that the cases consistently hold that the removal statute is to be narrowly construed.[15]
For the foregoing reasons, the motion to remand will be granted.
NOTES
[1] The Plan was established pursuant to Section 302(c) (5) of the Labor Management Relations Act, 29 U.S.C. § 186 (c) (5) (1970), which provides that the employees and employer must be equally represented in the administration of the fund.
[2] See generally 1A Moore, ¶ 0.157 [4.-11]; C. Wright, Law of Federal Courts, 131-32 (2d ed. 1970) [hereinafter Wright].
[3] One exception is federal habeas corpus proceedings brought by state prisoners alleging federal constitutional defects in their state convictions.
[4] In Barrow v. Hunton, 99 U.S. 80, 25 L.Ed. 407 (1878), a party against whom a default judgment had been entered in state court sought in that court to reopen the judgment on the ground of lack of service. The plaintiff removed. The Supreme Court required remand, on the ground that allowing removal would give the federal courts "power to control the proceedings in the State courts, or [to exercise] appellate jurisdiction over them in all cases where the parties are citizens of different States." Id. at 83. The holding was narrow, however; the Court distinguished a "bill in equity to set aside a decree for fraud," which would constitute an independent, removable proceeding because new facts were alleged. More than a "mere revision of errors and irregularities" is sought in such a proceeding.
[5] See Bondurant v. Watson, 103 U.S. 281, 287, 26 L.Ed. 447 (1880).
[6] 1A Moore, ¶ 0.157 [4.-11] at 173.
[7] Wright 131; Toney v. Maryland Cas. Co., 29 F.Supp. 785, 785-786 (W.D.Va. 1939).

Some practical problems of administration are suggested in the cases. Brucker v. Georgia Cas. Co., 14 F.2d 688, 689 (E.D.Mo.1926) raises the possibility of a federal court being forced to suspend garnishment proceedings if a state appellate court, upon review of the principal action, stays execution of the judgment. In London & Lancashire Indem. Co. v. Courtney, 106 F.2d 277, 283 (10th Cir. 1939), the court suggests a removed garnishment proceeding in which the garnishee owes the defendant more than the defendant owes the plaintiff; since the defendant is not before the federal court, the court would have to make a distribution of the excess without having all the parties before it.
[8] See Bank v. Turnbull & Co., 83 U.S. (16 Wall.) 190, 195 (1872).
[9] See 1A Moore, ¶ 0.167 [12]; Anno., 22 A.L.R.2d 904 (1950).
[10] See, e. g., Joski v. Short, 28 F.Supp. 821 (W.D.Wash.1939) (allowing removal); Toney v. Maryland Cas. Co., 29 F. Supp. 785 (W.D.Va.1939) (remanding); Lawley v. Whiteis, 24 F.Supp. 698 (N.D. Okla.1938) (remanding).
[11] See, e. g., Clarise Sportswear Co. v. U & W Mfg. Co., 223 F.Supp. 961 (E.D. Pa.1963) (Clary, J.) (allowing removal); Reed v. Bloom, 15 F.Supp. 7 (W.D.Okla. 1936) (allowing removal); Pratt v. Albright, 9 F. 634 (E.D.Wis.1881) (remanding).
[12] This position is consistent with the recent trend of decisions. See Wright at 132.
[13] Under 28 U.S.C. § 1441(c) (1970), it might be possible to remove the entire action. However, that section permits remand, in the discretion of the district court, of such causes of action not otherwise removable. On the facts of this case, retention of federal jurisdiction over the 15-year old cause of action against the union would be undesirable.
[14] The relationship of the two causes of action is far closer in this case than in most garnishment proceedings. In the latter cases, the garnishee's duty is owed to the defendant regardless of the outcome of the plaintiff's suit against the defendant; here, the Plan's obligations, if any, arise out of and cannot exist independently of the plaintiffs' successful assertion of a claim against the defendant.
[15] Wright at 136.

The employer-designated Trustees believe that the proposed remedy constitutes a "raid" on the funds of the Plan, an assertion that is vigorously disputed. This allegation does not affect the propriety of removal, however; the state court is as able as this Court to insure fairness.