**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-3171
_____

In re: Application of financialright claims GmbH

For an Order Pursuant to 28 U.S.C. 1782 to
Conduct Discovery for Use in a Foreign Proceeding

BURFORD GERMAN FUNDING LLC; GERMAN
LITIGATION SOLUTIONS LLC;
BURFORD CAPITAL LLC,
Appellants

_____

On Appeal from the United States District Court
for the District of Delaware
(D. Del. No. 1:23-cv-01481)
District Judge: Honorable Colm F. Connolly

_____

Argued on March 4, 2025
_____

Before: MATEY, FREEMAN, and ROTH, *Circuit Judges*

(Filed: October 22, 2025)
_____

Travis G. Edwards
Minsuk Han
Derek T. Ho **[Argued]**
Rund Khayyat
Eliana M Pfeffer
Daren G. Zhang
Kellogg Hansen Todd Figel & Frederick
1615 M Street NW

Sumner Square, Suite 400
Washington, DC 20036

> *Counsel for Appellants - Burford German Funding LLC and Burford Capital LLC*

Anne S. Gaza
Samantha G. Wilson
Young Conaway Stargatt & Taylor
1000 N King Street
Rodney Square
Wilmington, DE 19801

> *Counsel for Appellants - Burford German Funding LLC, Burford Capital LLC, and German Litigation Solutions LLC*

Edward P. Boyle
Allison M. Cunneen
Venable
151 W 42nd Street
49th Floor
New York, NY 10036

> *Counsel for Appellant - German Litigation Solutions LLC*

Albert Bates, Jr.
Troutman Pepper Locke
501 Grant Street
Union Trust Building, Suite 300
Pittsburgh, PA

> *Counsel for Amicus-Appellant*

Polina M. Bensman
Jeffrey A. Rosenthal **[Argued]**
Cleary Gottlieb Steen & Hamilton
One Liberty Plaza
New York, NY 10006

> *Counsel for Appellee*

_____

OPINION

_____

ROTH, Circuit Judge,

Appellee, financialright claims GmbH (FRH), initiated a discovery procedure under 28 U.S.C. § 1782. Appellants, Burford German Funding (BGF), Burford Capital LLC (BCL), and German Litigation Solutions LLC (GLS) (collectively "Burford"), believed that the proceeding breached FRH's contractual commitments to them and moved to compel arbitration. Although 9 U.S.C. § 206 would likely have authorized that motion, Burford chose instead to bring it under 9 U.S.C. § 4. The District Court denied Burford's motion, finding that § 1782 petitions are not "civil actions," as required by § 4. As a matter of first impression, we agree. While both sides have put forth thoughtful arguments, and this appeal provides us with no need to determine the meaning of "civil actions" generally, our review of § 4's history and context, as well as of our sister-circuits' interpretation of parallel provisions, persuades us that the District Court properly disclaimed jurisdiction. We will affirm.

## I.

BGF is an entity created to fund mass antitrust suits in Germany. It is co-owned by BCL and GLS (collectively with BGF, "Burford"). Because German law does not allow for class actions, bringing a mass action necessitates going one by one to potential plaintiffs and having them assign their individual claims to a claim aggregator.

In July of 2016, the European Commission found that five truck manufacturers had engaged in price fixing. This gave many German truck owners potential causes of action against those manufacturers. In April 2017, BGF entered into a Capital Provision Agreement (CPA) with FRH, under which FRH would serve as the aggregator for those

3

claims and BGF would fund the ensuing litigations. The CPA included an expansive arbitration provision, covering any "dispute, controversy or claim arising out of or in connection with" the CPA "including any question regarding its formation, existence, validity, interpretation, performance, breach, or termination."[1]

The CPA further required FRH to use BGF's chosen law firm—Hausfield Rechtanswalte LLP—to prosecute the litigations. FRH entered into a representation agreement with Hausfield in June 2017. That agreement did not contain an arbitration provision and instead required all disputes to be litigated in German court in Berlin.

In late 2021, FRH came to believe that individuals affiliated with Hausfield held an undisclosed ownership stake in GLS, one of BGF's parent entities. As a result, Hausfield was allegedly indirectly receiving a percentage of the recovery from the ongoing litigations—which, FRH argues, violated Germany's restrictions on contingency fees. This led FRH to file a complaint against Hausfield in German court in December 2023.

Simultaneously, FRH petitioned in the District of Delaware for an order, pursuant to 28 U.S.C. § 1782, authorizing it to seek discovery from Burford.[2] Relying on the arbitration clause in the CPA, Burford moved to compel arbitration under 9 U.S.C. § 4, and to stay proceedings pending that arbitration under 9 U.S.C. § 3. When pressed at a motion

---

[1] Appx. 141 § 27(a).

[2] Parallel to its § 1782 petition, FRH brought a separate action in the District of Delaware, seeking a declaratory judgment that the arbitration clause in the CPA had been fraudulently induced, which has since been referred to arbitration. *See Financialright Claims GMBH v. Burford German Funding LLC*, No. 24-929-CFC, 2025 WL 2306958, at *5 (D. Del. Aug. 11, 2025). That second action involves a different cast of parties and issues from those in FRH's § 1782 petition and has no bearing on the question we consider in this appeal.

hearing, Burford confirmed that the statutory bases for its motions were §§ 3 and 4. The District Court denied Burford's arbitration motion, finding that § 4 of the FAA does not confer subject matter jurisdiction to compel the arbitration of § 1782 petitions.[3] Burford appealed.[4]

## II.

The District Court had jurisdiction over FRH's discovery petition under 28 U.S.C. § 1782.[5] It had putative jurisdiction over Burford's motion to compel under 9 U.S.C. § 4, and over its stay motion under § 3. We have interlocutory appellate jurisdiction under 9 U.S.C. §§ 16(a)(1)(A)–(B). We apply plenary review to the District Court's analysis of the FAA and determinations concerning its subject matter jurisdiction.[6]

## III.

---

[3] Separately, the District Court analyzed FRH's § 1782 petition on the merits, found the requested discovery was warranted, and granted leave to subpoena Burford. That merits ruling is not before us on this interlocutory appeal. *See In re Amgen Inc.*, 139 F.4th 265, 267 (3d Cir. 2025) (*per curiam*).

[4] We granted Burford's motion to stay proceedings pending resolution of this appeal. *See Coinbase, Inc. v. Bielski*, 599 U.S. 736, 738 (2023) (holding that a district court must stay proceedings during the pendency of a § 16(a) appeal).

[5] *See In re Chevron Corp.*, 633 F.3d 153, 160 (3d Cir. 2011); *In re Chevron Corp.*, 650 F.3d 276, 286 (3d Cir. 2011). We acknowledge that we have at times cited 28 U.S.C. § 1331 as an alternative jurisdictional basis for § 1782 petitions. *See, e.g., In re Amgen*, 139 F.4th at 267. Because jurisdiction is undoubtedly proper under § 1782, we need not address whether § 1782 petitions fall within the scope of § 1331. *See Hagans v. Levine*, 415 U.S. 528, 533 n.5 (1974) (noting that unanalyzed statements concerning background issues lack precedential weight); *Grant v. Shalala*, 989 F.2d 1332, 1341 (3d Cir. 1993) (same).

[6] *See Castro v. United States Dep't of Homeland Sec.*, 835 F.3d 422, 429 (3d Cir. 2016); *Gov't Emps. Ins. Co. v. Mount Prospect Chiropractic Ctr., P.A.*, 98 F.4th 463, 467 (3d Cir. 2024).

9 U.S.C. § 4 authorizes any district court which, "save for" an arbitration agreement, "would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties" to issue an order compelling arbitration. By its terms, § 4 thus requires the litigation in question to be both a "suit" and (outside of admiralty) a "civil action." The District Court concluded that § 1782 petitions do not satisfy these predicate requirements, and we agree. That said, whether the drafters of the FAA would have viewed § 1782 petitions as suits is far from clear. Multiple lines of evidence, however, collectively persuade us that they would not have viewed them as civil actions.

## A.

Although undoubtedly capacious, statutory references to the term "suit" have never been treated as encompassing all judicial proceedings. Instead, courts have traditionally assumed that (barring contrary evidence) Congress intended the term to cover only proceedings that are both sufficiently formal and sufficiently independent from any related litigation.[7] Likewise, courts have long expressed hesitancy before applying that term to requests for purely discretionary judicial intervention.[8] This reflects the reality that the

---

[7] *See First Nat'l Bank v. Turnbull & Co.*, 83 U.S. 190, 194–95 (1872) (questioning, where an enforcement action did not require process, pleas, or written response, whether "so informal a proceeding" should be considered "a suit, and not essentially a motion"); *Barrow v. Hunton*, 99 U.S. 80, 83 (1878) (distinguishing, in light of *Turnbull*, between ancillary proceedings and independent suits); *see generally Ohio v. Doe*, 433 F.3d 502, 506 (6th Cir. 2006); *Armistead v. C & M Transp., Inc.*, 49 F.3d 43, 46 (1st Cir. 1995).

[8] *See, e.g.*, *Bath Cnty. v. Amy*, 80 U.S. 244, 248 (1871) (expressing doubt that, without clearer instructions, Congress would have intended the phrase "suits of a civil nature at common law, or in equity" to cover purely prerogative proceedings); *Ex parte Milligan*, 71 U.S. 2, 72 (1866) (treating habeas petition as a suit where "the point in controversy was a

touchstone of a "suit" has always been the vindication of an affirmative right of the suitor.[9]

The boundaries laid out by these precedents are admittedly murky, and their application can be charitably described as inconsistent.[10]  Yet, in the context of discovery mechanisms like § 1782, we do not write on a blank slate.  While we are aware of no court that has meaningfully analyzed whether subpoena petitions are "suits" for the purpose of the FAA, courts have frequently been asked to decide whether various subpoena proceedings qualify as "suits" for Eleventh Amendment purposes—and have widely found that they do not.[11]  Our Court has not yet weighed in on that question, but we note that the case for following our sister-circuits' reasoning is stronger in the context of § 1782.  Unlike other discovery mechanisms, § 1782 petitions are, by definition, ancillary to a separate

---

matter of right and not of discretion"); *Cohens v. Virginia*, 19 U.S. 264, 410 (1821) (Marshall, C.J.) (declining to treat petition as suit where no substantive claim was asserted).

[9] *See, e.g.*, 3 William Blackstone, Commentaries *116 (noting the existence of "a diversity of suits and actions, which are defined by the Mirror to be 'the lawful demand of one's right'"); *Suit*, Black's Law Dictionary (4th ed. 1951) (noting that the term "suit" entails "the redress of an injury or the enforcement of a right").

[10] *Cf. Int'l Org. Masters, Mates & Pilots of Am., Loc. No. 2 v. Int'l Org. Masters, Mates & Pilots of Am., Inc.*, 342 F. Supp. 212, 214 (E.D. Pa. 1972) (noting that cases applying the "ancillariness" doctrine are "few, old, and sometimes difficult to reconcile" and that courts are "hopelessly divided in their results and reasoning").

[11] *See, e.g.*, *United States Dep't of Just. v. Ricco Jonas*, 24 F.4th 718, 727 (1st Cir. 2022); *Barnes v. Black*, 544 F.3d 807, 812 (7th Cir. 2008); *In re Missouri Dep't of Nat. Res.*, 105 F.3d 434, 436 (8th Cir. 1997); *Univ. of Texas at Austin v. Vratil*, 96 F.3d 1337, 1340 (10th Cir. 1996).  *But cf. Russell v. Jones*, 49 F.4th 507, 512 n.8 (5th Cir. 2022) (disagreeing with the majority approach, but doing so because the Eleventh Amendment reflects a pre-existing right sweeping broader than its text, not because subpoena proceedings constitute "suits").

proceeding,[12] purely discretionary,[13] and primarily aimed at assisting foreign tribunals.[14] It is thus hard to describe § 1782 petitions as vindicating any "right" at all.[15]  Nor are they comparable to declaratory or injunctive suits, in which a plaintiff has no right to a particular remedy but *has* suffered an injury to a vested legal[16] or equitable[17] right.  We therefore question whether, even focusing solely on the statute's "suit" requirement, § 1782 proceedings would qualify for arbitration under § 4.

**B.**

In fact, we need not resolve whether § 1782 proceedings satisfy § 4's "suit" requirement because, even assuming Congress *would* have viewed § 1782 proceedings as "suits," we do not believe it would have considered them to be "civil actions."

---

[12] *See Post v. Toledo, C. & St. L.R. Co.*, 11 N.E. 540, 548 (Mass. 1887) (noting that, in aiding a foreign tribunal, domestic courts act "ancillary to" that tribunal); *Mitchell v. Smith*, 1 Paige Ch. 287, 288 (N.Y. Ch. 1828) (same); *Republic of Ecuador v. Connor*, 708 F.3d 651, 655 (5th Cir. 2013) (noting that a § 1782 proceeding "addresses an interlocutory discovery application that is ancillary to a non-domestic proceeding," and "'adjudicates' nothing else").

[13] *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004) ("[A] district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so.").

[14] *See ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 632 (2022) (noting that "the animating purpose of § 1782 is comity").

[15] *See Connor*, 708 F.3d at 655; *cf. Mosseller v. United States*, 158 F.2d 380, 382 (2d Cir. 1946) (noting that petitions for discovery to be used in a separate proceeding "[are] not [a] determination of substantive rights, but merely the providing of aid for the eventual adjudication of such rights").

[16] *See* 28 U.S.C. § 2201; *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242 (1937) (noting that declaratory actions call "for an adjudication of present right upon established facts").

[17] *See Alexander v. Hillman*, 296 U.S. 222, 239 (1935) ("Treating their established forms as flexible, courts of equity may suit proceedings and remedies to the circumstances of cases and formulate them appropriately to safeguard, conveniently to adjudge, and promptly to enforce substantial rights of all the parties before them."); Joseph Story, *Commentaries on Equity Jurisprudence*, §§ 25–28 (1988 ed.).

Like many terms in the legal lexicon, the term "civil action" can be an elusive one. In its broadest sense, it has sometimes been used synonymously with "suit."[18] However, since the proliferation of the Field Code in the mid-19th century which merged law and equity and eliminated the traditional forms of action,[19] the term has developed a more technical, more common, and more limited definition: proceedings begun by a formal summons and pleadings and culminating in a judgment (as distinguished from special proceedings lacking these requirements).[20] While we acknowledge the considerable uncertainty in this area, we believe it most likely that the drafters of the FAA had this later definition in mind.

By the time Congress passed the relevant iteration of § 4 in 1954, versions of the Field Code's conception of "civil action" had become widely adopted throughout the nation in both statutes and caselaw.[21] The Field Code definition was also reflected in the

---

[18] *See, e.g.*, *Holmes v. Jennison*, 39 U.S. 540, 565 (1840) (treating "civil action" and "suit" as synonyms); *United States v. Ten Thousand Cigars*, 28 F. Cas. 39, 39 (C.C.D. Iowa 1867) (Miller, J.) ("The phrase 'civil actions' includes actions at law, suits in chancery, proceedings in admiralty, and all other judicial controversies in which rights of property are involved[.]").

[19] The Field Code, which was first enacted by New York State in 1848 and then adopted in whole or in part by other American states, attempted to recognize and simplify procedural law.

[20] *See* ch. 438, 1849 N.Y. Laws 614, §§ 2–3 ("An action is an *ordinary proceeding* in a court of justice, by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense. Every other remedy is a special proceeding." (emphasis added)); *Belknap v. Waters*, 11 N.Y. 477, 478 (1854) (noting that the phrase "ordinary proceeding" "was intended to designate those ordinary proceedings which are instituted by summons and complaint").

[21] *See, e.g.*, *Roberts v. Roberts*, 162 P.2d 117, 120 (Wyo. 1945) ("There can be no doubt that the 'action' mentioned . . . means an ordinary proceeding in a court of justice, involving process, pleadings and ending in a judgment."); *Nelson v. Cowling*, 116 S.W. 890, 893 (Ark. 1909); *In re Joseph's Estate*, 50 P. 768, 768 (Cal. 1897); *Denver & N. O. R. Co. v.*

Alaskan civil code, enacted by Congress in 1900,[22] the Code of Civil Procedure of the Canal Zone, enacted by Congress in 1933,[23] and the Canal Zone Code, enacted by Congress in 1962.[24] Most importantly, the Field Code's conception of civil actions was embedded in the Federal Rules of Civil Procedure, which Burford acknowledges were (along with the codification of Title 28) the immediate impetus for § 4's current text.[25] Congress has also shown that, where it wishes to employ a broader definition of the term "civil action," it knows how to do so.[26]

_Lamborn_, 8 P. 582, 584 (Colo. 1885); _Appeal of Slattery_, 96 A. 178, 179 (Conn. 1915); _Nelson v. Steele_, 88 P. 95, 95–96 (Idaho 1906); _Evans v. Evans_, 5 N.E. 24, 27–28 (Ind. 1886); _In re Bradley_, 79 N.W. 280, 281 (Iowa 1899); _Lanning v. Gay_, 78 P. 810, 810–11 (Kan. 1904); _Gay v. Morgan_, 67 Ky. 606, 606–07 (1868); _Schuster v. Schuster_, 87 N.W. 1014, 1015 (Minn. 1901); _Bopst v. Williams_, 229 S.W. 796, 798–99 (Mo. 1921); _Deer Lodge Cnty. v. Kohrs_, 2 Mont. 66, 70–71 (1874); _Turpin v. Coates_, 11 N.W. 300, 301 (Neb. 1881); _State ex rel. Germain v. District Court_, 51 P.2d 219, 222 (Nev. 1935) (overruled primarily on statutory grounds by _Cord. v. Second Judicial District_, 533 P.2d 1355 (Nev. 1975)); _Tate v. Powe_, 64 N.C. 644, 647–48 (1870); _Dow v. Lillie_, 144 N.W. 1082, 1084 (N.D. 1914); _State v. Rosenwald Bros. Co._, 170 P. 42, 43–44 (N.M. 1918); _Missionary Soc. of Methodist Episcopal Church v. Ely_, 47 N.E. 537, 538 (Ohio 1897); _Harryman v. Bowlin_, 4 P.2d 1011, 1012 (Okla. 1931); _Livesly v. Landon_, 138 P. 853, 854 (Or. 1914); _Smith v. Saye_, 127 S.E. 568, 569 (S.C. 1925); _In re Golder's Estate_, 158 N.W. 734, 736 (S.D. 1916); _Smith v. Ormsby_, 55 P. 570, 570 (Wash. 1898); _In re Welch_, 84 N.W. 550, 552 (Wis. 1900); _see generally_ Kellen Funk, _Equity without Chancery: The Fusion of Law and Equity in the Field Code of Civil Procedure, New York 1846–76_, 36 J. Legal Hist. 152, 167 (2015) (noting that, by 1900, "more than twenty-five states and territories had enacted one or another version of the [Field] Code").

[22] Act of June 6, 1900, ch. 786, 31 Stat. 321, 338.

[23] Act of Feb. 27, 1933, Pub. L. No. 72-375, ch. 127, 47 Stat. 908, 909.

[24] C.Z. Code tit. 5 §§ 5–6 (1962); _cf._ Act Providing a Code of Procedure in Civil Actions and Special Proceedings in the Philippine Islands, Act No. 190, § 1 (1901) (enacted by the Taft Commission under Congressional authorization).

[25] _See_ Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court.").

[26] _See_ 28 U.S.C. § 1442(d)(1) (providing, _solely_ for federal-officer removal purposes, that the term "civil action" includes "ancillary" proceedings over "a subpoena for testimony or

This statutory history does not mean that the modern definition of "civil actions" has become that term's *only* possible interpretation, or that it should be mechanically applied regardless of context.[27] Yet it does suggest to us that, in the absence of further Congressional guidance, it is the *best* interpretation for the purpose of this appeal. That is particularly true because, as with the term "suit," we do not paint on fresh canvas. The pages of the U.S. Code are flush with references to "civil actions." Whether it be the Equal Access to Justice Act,[28] the National Childhood Vaccine Injury Act,[29] the Federal Tort Claims Act,[30] or elsewhere,[31] courts addressing such clauses have generally done so through the lens of the Federal Rules (and the Field Code-inflected definition they reflect).

---

documents"); *see also Florida v. Cohen*, 887 F.2d 1451, 1454 (11th Cir. 1989) (holding that, prior to the enactment of § 1442(d)(1), subpoena proceedings were non-removable under § 1442). *But cf. Brown & Williamson Tobacco Corp. v. Williams,* 62 F.3d 408, 415 (D.C. Cir. 1995) (departing from *Cohen* based on "the purpose of the removal statute . . . rather than the actual language" of § 1442, while acknowledging that subpoena proceedings are not technically civil actions).

[27] *See Civil Action*, Black's Law Dictionary (4th ed. 1951) (first defining the term as entailing an issue "presented for trial formed by averments of complaint," but also noting alternative definitions); *cf. In re Wilcox,* 135 P. 995, 995 (Kan. 1913) (concluding that a particular statutory reference to an "action" was best understood, in light of context and purpose, as reflecting a broad definition of the term); *Dinsmore v. Barker*, 212 P. 1109, 1110 (Utah 1923) (similar).

[28] *See In re Teter*, 90 F.4th 493, 499 (6th Cir. 2024) (holding that, to qualify as a "civil action" under the EAJA, a proceeding must normally involve "the filing of a complaint").

[29] *See Schindler v. Sec'y of Dep't of Health & Hum. Servs.*, 29 F.3d 607, 610 (Fed. Cir. 1994) (holding that probate proceedings are not "civil actions" under 42 U.S.C. §300aa-11(a)(7)'s dual-recovery bar).

[30] *See N. V. Philips' Gloeilampenfabrieken v. Atomic Energy Comm'n*, 316 F.2d 401, 405 (D.C. Cir. 1963) (Wright, J.) (noting that the phrase "civil action" in the FTCA's statute of limitations "is a term of art judicially and statutorily defined" by Rule 3).

[31] *See, e.g., Island Indus., Inc. v. Sigma Corp.*, 142 F.4th 1153, 1163 (9th Cir. 2025) (28 U.S.C. § 1582); *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 120 (2d Cir. 2017) (42 U.S.C. § 1650a); *Orr v. Clements*, 688 F.3d 463, 466 (8th Cir. 2012) (28 U.S.C. § 1915).

The most extensively analyzed such provision (and the only one Burford even attempts to address) is 28 U.S.C. § 1441, the primary vehicle through which litigants remove "civil actions" to federal court (which bears a near-identical statutory history to § 4).[32] The large majority of courts that have considered whether ancillary discovery proceedings constitute "civil actions" under § 1441 have concluded that they do not.[33] Burford attempts to distinguish these later cases because many involved prelitigation discovery, whereas FRH has already brought suit in Germany.[34] That might be an understandable distinction were Burford seeking to compel FRH to arbitrate its German civil action. Yet, that is not the case before us, and the existence of a civil action that is related to (or even subsumes) FRH's § 1782 petition does not turn that petition itself into a civil action.[35]

---

[32] *See* Act of June 25, 1948, Pub. L. No. 80-773, ch. 646, 62 Stat. 869, 937 (replacing "any suit of a civil nature, at law or in equity" with "civil action").

[33] *See, e.g.*, *Teamsters Loc. 404 Health Servs. & Ins. Plan v. King Pharms., Inc.*, 906 F.3d 260, 266–67 (2d Cir. 2018); *Young v. Hyundai Motor Mfg. Alabama, LLC*, 575 F. Supp. 2d 1251, 1253–55 (M.D. Ala. 2008); *In re Hinote*, 179 F.R.D. 335, 336 (S.D. Ala. 1998); *Barrows v. Am. Airlines, Inc.*, 164 F. Supp. 2d 179, 182 (D. Mass. 2001); *McCrary v. Kan. City S. R.R.*, 121 F. Supp. 2d 566, 569 (E.D. Tex. 2000); *Mayfield-George v. Tex. Rehab. Comm'n*, 197 F.R.D. 280, 283–84 (N.D. Tex. 2000); *Oshkosh Truck Corp. v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 67 F.R.D. 122, 123–24 (E.D. Wis. 1975). *But see, e.g.*, *In re Texas*, 110 F. Supp. 2d 514, 519–21 (E.D. Tex. 2000), *rev'd on other grounds sub nom Texas v. Real Parties in Int.*, 259 F.3d 387 (5th Cir. 2001) (reviewing the enactment history of § 1441).

[34] *But see, e.g.*, *F.B.I. v. Superior Ct. of Cal.*, 507 F. Supp. 2d 1082, 1088–89 (N.D. Cal. 2007) (holding that mid-suit subpoenas are not civil actions either).

[35] *See Kuznar v. Kuznar*, 775 F.3d 892, 895 (7th Cir. 2015) (noting that motions related to civil actions are not themselves civil actions); *In re Teter*, 90 F.4th at 499 (same); *cf. In re Cintas Corp. Overtime Pay Arb. Litig.*, 444 F. Supp. 2d 1353, 1355 (J.P.M.L. 2006) (holding that, "[i]n order to effectuate the statutory objective[]" of 28 U.S.C. § 1407, the term "civil action" should be construed as including all civil motions).

To be clear, we do not construe today any statute other than 9 U.S.C. § 4. Particularly given the peculiar posture in which it has made its way to our desks, this appeal provides us with a poor vantage point to opine on the meaning of the term "civil action" generally. The breadth of the caselaw supporting FRH's position nevertheless strengthens our conclusion that we walk the right path. This is especially true because, here too, the case for applying that caselaw's reasoning is arguably stronger in the context of § 1782. Most of our sister-circuits' decisions attempting to define the term "civil action" have done so in the context of state-law proceedings, in which one relevant interpretative consideration is how best to integrate proceedings Congress did not design (and may not have envisioned) into a Congressionally-crafted framework.[36] In some instances, such cases may also implicate concerns that a state may be seeking to insulate its proceedings from federal review through creative use of procedure.[37] Here, meanwhile, it was *Congress* that enacted § 1782, and it was *Congress* that chose not to structure it as a traditional civil action. If our sister-circuits' reasoning is to apply *anywhere*, we are satisfied that this appeal presents such a case.

---

[36] *See Commr's of Rd. Improvement Dist. No. 2 of Lafayette Cnty., Ark. v. St. Louis Sw. Ry. Co.*, 257 U.S. 547, 558 (1922) (noting that "[w]hile the decision of the state court as to the nature of a proceeding under state statutes . . . is, of course, very persuasive, it is not controlling" where a federal statute is at issue).

[37] *See Donald v. Phila. & Reading Coal & Iron Co.*, 241 U.S. 329, 332 (holding that a state may not by statute "seek to prevent . . . foreign commercial corporations doing local business from exercising their constitutional right to remove suits into Federal courts"); *cf.* The Federalist, No. 80 (Alexander Hamilton) (noting that federal diversity jurisdiction aims to protect out-of-state litigants' rights "against all evasion and subterfuge").

Seeking to avoid the consequences of § 4's text, Burford suggests that the words "civil action" in § 4 were intended as a non-substantive emendation to a prior version of § 4 which referred to actions "at law, in equity, or in admiralty."[38]  This amendment history gives us momentary pause.  However, as a general rule, "we must presume that a legislature says in a statute what it means and means in a statute what it says there."[39]  Even were we permitted to revise Congress' handiwork, this appeal presents a poor candidate for doing so—and not only because it is doubtful that § 1782 petitions would have fallen under the prior version of the statute.  Burford has not shown that Congress intended the 1954 amendments to the FAA to be *purely* non-substantive—and certainly has not presented enough evidence to override the best reading of those amendments' text.[40]  And to the extent there is ambiguity, the legislative history for the 1954 amendments expressly indicates that Congress *did not* intend § 4 to permit the arbitration of special proceedings (of which § 1782 petitions are an apparent example).[41]

In short, the text, context, statutory history and (to whatever extent it is relevant) legislative history of § 4 collectively persuade us that, while the matter is not as clear as

---

[38] *See* Rep. Br. 9 (quoting 61 Stat. 671 (1947)).
[39] *See United States v. Jabateh*, 974 F.3d 281, 296 n.18 (3d Cir. 2020) (quotation omitted).
[40] *Cf.* Anita S. Krishnakumar, *Statutory History*, 108 Va. L. Rev. 263, 305–06 (2022) ("[I]t could very well be the case that Congress amended a statute precisely in order to change its longstanding thrust, rather than simply to clarify the meaning the statute had all along."); *In re Clark*, 678 F. Supp. 3d 112, 123 (D.D.C. 2023) (drawing the opposite inference from a near-identical amendment).
[41] *See* S. Rep. No. 2498, 9 (1954) reprinted in 1954 U.S.C.C.A.N. 3991, 3998 ("The words 'in a civil action' were substituted for 'at law, in equity' because, in civil matters other than admiralty **and special proceedings**, Rule 2 of the Federal Rules of Civil Procedure provides that in district courts there shall be one form of action." (emphasis added)); H.R. Rep. 1981, 9 (1954) (same).

we may have wished, Congress most likely intended the term "civil action" in § 4 to mean precisely what it does in the Federal Rules of Civil Procedure and its precursors. There is no question that § 1782 proceedings—which are ancillary to a foreign suit, initiated without pleading or summons, granted without notice,[42] and concluded without a judgment—are not civil actions under that definition.

## IV.

As an alternative ground for reversing, Burford asks us to find that, where "a case is already properly in federal court, the court's jurisdiction over that case gives it jurisdiction to hear a motion to compel arbitration under FAA § 4" even if that case is not a Title 28 "civil action . . . of the subject matter of a suit." Burford makes no meaningful effort to reconcile this suggestion with the text of § 4.[43] Nor does it explain why, if § 4's Title 28 "civil action" requirement falls by the wayside as soon as a court has assumed jurisdiction, numerous traditionally non-arbitrable classes (such as criminal defendants) could not shift their prosecutions to arbitral tribunals.[44] Burford's approach is also at

---

[42] *See In re Schlich*, 893 F.3d 40, 51 (1st Cir. 2018) (noting that "it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 ex parte" (quotation omitted)); *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1196 (11th Cir. 2016).

[43] Burford notes the inherent "ancillary enforcement jurisdiction" district courts possess to "manage [their] proceedings, vindicate [their] authority, and effectuate [their] decrees." *See Butt v. United Bhd. of Carpenters & Joiners of Am.*, 999 F.3d 882, 887 (3d Cir. 2021)**.** Whatever the bounds of this inherent authority, it has no bearing on a district court's jurisdiction to compel arbitration *pursuant to* 9 U.S.C. § 4.

[44] It is true that such a proceeding would still need to "aris[e] out of" a "contract evidencing a transaction involving commerce." *See* 9 U.S.C. § 2. But a controversy can "arise out of" a contract to which it bears only a minimal nexus. *But cf. In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 523 (3d Cir. 2019). And, without § 4's civil proceeding requirement, there is no obvious reason why a fraud, bribery, or embezzlement prosecution stemming from a government contract could not qualify.

tension with the Supreme Court's guidance in *Vaden* that the presence (or absence) of § 4 jurisdiction should generally not turn on the parties' filing choices.[45]

As a justification for ignoring the plain text of § 4, Burford hangs its hat on the Supreme Court's statement in *Badgerow v. Walters* that, where a court already has jurisdiction, "there is no need to 'look through' the motion in search of a jurisdictional basis outside the court."[46] Yet, in context, *Badgerow* plainly did not mean that all limiting language in the FAA becomes irrelevant where a court has any basis for jurisdiction.

The language Burford cites addresses the longstanding rule that, *in addition to those limitations expressly delineated in the FAA*, a court may not grant a motion under Chapter 1 of the FAA (9 U.S.C. §§ 1–16) unless it has a basis outside of the FAA for asserting jurisdiction.[47] The result of this rule is that, where (non-diverse) parties are fighting over a federal issue, a court may not act under Chapter 1 where the parties' right to *arbitrate* that dispute arises solely from state law (or from the FAA itself).[48] In *Vaden*, the Court created a limited "look-through" exception to that rule for § 4, under which a district court that *would have* jurisdiction over the underlying dispute the parties seek to arbitrate may compel arbitration.[49] In *Badgerow*, the Court refused to expand this exception outside the

---

[45] *See Vaden v. Discover Bank*, 556 U.S. 49, 65 (2009) (rejecting an approach which "would permit a federal court to entertain a § 4 petition only when a federal-question suit is already before the court" and not "a § 4 petitioner who *could* file a federal-question suit in . . . federal court, but who has not done so" (emphasis in original)).

[46] *See Badgerow v. Walters*, 596 U.S. 1, 15 (2022).

[47] *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983).

[48] *See Badgerow*, 596 U.S. at 9.

[49] *See Vaden*, 556 U.S. at 62–65.

confines of § 4.[50]  It noted in this context that where litigation is already pending there is no role for a look-through style approach to play since, even under the FAA's anomalously high standards, the independent-jurisdictional-basis requirement will already have been satisfied.[51]  *Badgerow* did not hold that a court may also ignore the *other* prerequisites laid out in the FAA, and there is no basis for reading such a conclusion into its reasoning.[52]

Burford's invocation of language in *Vaden v. Discovery Bank* that, where "a federal-question suit has been filed in or removed to federal court, the court may order arbitration under FAA § 4" also fails to persuade us.[53]  In light of our holding that § 1782 proceedings are not civil actions for the purpose of § 4, it is doubtful that they fall within § 1331's grant of federal-question jurisdiction.[54]  Yet even if they do, the passage Burford cites in *Vaden* merely held that § 4's independent jurisdictional basis test is satisfied once federal-question jurisdiction has been shown.  It *did not* hold that all threshold requirements imposed by § 4 become irrelevant where federal-question jurisdiction exists.

## V.

As a final backstop, Burford urges us to hold that its motion should have been granted under Chapter 2 of the FAA (rather than under § 4).  We do not reach this argument.  Despite multiple opportunities, Burford consistently declined to invoke Chapter 2 before

---

[50] *See Badgerow*, 596 U.S. at 15.

[51] *See id*.

[52] Because neither Burford nor FRH disputes that, if § 4 bars Burford's motion at all, it does so jurisdictionally, we do not consider whether § 4's limiting language is best understood as a jurisdictional element, as a non-jurisdictional claims-processing rule, or as a substantive element of a § 4 motion.

[53] *See Vaden*, 556 U.S. at 65 (internal quotation omitted).

[54] *See supra* note 5.

the District Court and repeatedly told the District Court that its motion was predicated on § 4.  Burford argues that, because the District Court raised subject matter jurisdiction *sua sponte*, it lacked a previous opportunity to respond.  That suffices to let Burford raise new arguments defending the § 4 motion it actually presented.[55]  Burford has done so, and we have considered those arguments carefully.  It does not authorize Burford to present an entirely new statutory basis for its motion for the first time on appeal.[56]

## VI.

This is an unusual appeal, and we suspect the question it presents will not often recur.  Meanwhile, the interpretive issues it implicates concerning the general definition of terms such as "suit" and "civil action" are both difficult and far-reaching.  There will be time for a fuller discussion of those broader issues should the need present itself.  For today, it is enough for us to hold that, in the limited context of § 4, Burford has failed to show that ancillary discovery proceedings pursuant to § 1782 would have been viewed by Congress as civil actions.  We will accordingly affirm the District Court's order, dismissing Burford's motion to compel arbitration.

---

[55] *See Prop. & Cas. Ins. Ltd. v. Cent. Nat. Ins. Co. of Omaha*, 936 F.2d 319, 323 n.7 (7th Cir. 1991); *Reyes-Colón v. Banco Popular De Puerto Rico*, 110 F.4th 54, 66 n.14 (1st Cir. 2024).

[56] *See United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1518 n.2 (10th Cir. 1996) ("Our duty to consider unargued *obstacles* to subject matter jurisdiction does not affect our discretion to decline to consider waived arguments that might have *supported* such jurisdiction.").

MATEY, *Circuit Judge*, dissenting.

The majority ably grapples with this discrete, yet demanding, question, concluding that proceedings pursuant to 28 U.S.C. § 1782 do not qualify as "civil actions" under 9 U.S.C. § 4. But I would look to the ordinary meaning of the term at the time of enactment. Early in the twentieth century, a civil action was understood in "Common Law" systems as "one which seeks the establishment, recovery, or redress of private and civil rights."[1] That broad conception has remained constant,[2] and is consistent with section 1782, through which applicants may seek an order demanding information under penalty of contempt. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). Jurisdiction for section 4 requires a "suit," which is satisfied because "the terms 'action' and 'suit' are [by 1951] nearly, if not entirely, synonymous."[3] And the District Court needed no more to exercise jurisdiction over FRC's section 1782 application and Burford's motion to compel. *See Badgerow v. Walters*, 596 U.S. 1, 15 (2022); *Vaden v.*

---

[1] *Civil Action*, A Law Dictionary 203 (2d ed. 1910); *see also* Walter A. Shumaker & George Foster Longsdorf, The Cyclopedic Dictionary of Law 152 (1901) (same).

[2] *See Civil Action,* Black's Law Dictionary 312 (4th ed. 1951) (defining "civil action" as "[b]oth actions at law and actions in equity" and repeating the common law definition); *Civil Action*, Black's Law Dictionary 331 (3d ed. 1933) (repeating the common law definition).

[3] *Action*, Black's Law Dictionary 49 (4th ed. 1951). Any semantic separation that remained stemmed from an action sounding only in law, while a suit sounded in law and equity—a distinction that no longer makes a difference in federal practice. Put differently, suit is "[a] generic term of comprehensive signification, and applies to any proceeding by one person against another" where "the plaintiff pursues the remedy which the law affords him." *Suit*, Black's Law Dictionary 1603 (4th ed. 1951); *see also Suit*, Black's Law Dictionary 1676 (3d ed. 1933) (same); *Hohn v. United States*, 524 U.S. 236, 246 (1998) ("Presentation of the petition for judicial action is the institution of a suit." (quoting *Ex Parte Quirin*, 317 U.S. 1, 24 (1942))).

1

*Discover Bank*, 556 U.S. 49, 62 (2009). For that reason, I would review the order denying the motion to compel arbitration and remand for a second look, and so respectfully dissent.